Otto **GRAHAM**, Petitioner,

v.

The **PEOPLE** of the State of Colorado, Respondent.

No. 83SC374.

Supreme Court of Colorado,
En Banc.

Aug. 26, 1985.

Rehearing Denied Sept. 23, 1985.

Robert A. Millman, Colorado Springs, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review an unpublished court of appeals decision upholding the El Paso County District Court's denial of the defendant's motion for new trial based on newly discovered evidence. The evidence at issue showed that the district attorney's office allowed a prosecution witness to misrepresent the scope of an agreement to dismiss pending charges against the witness in exchange for testimony against the defendant. The court of appeals upheld the denial of the motion for new trial because the evidence was available to the defendant at the time of trial and only would add to the impeachment of the witness' testimony. We conclude that the prosecution's use of erroneous testimony that affects the credibility of its witness may be raised as plain error on appeal, but affirm the judgment of the court of appeals because the testimony constituted harmless error under the facts of this case.

The defendant, Otto Graham, was convicted of nine counts of aggravated robbery, three counts of first-degree sexual assault, one count of third-degree sexual assault, one count of aggravated motor vehicle theft and three counts of crimes of violence in connection with the robberies of two Taco Bells and a Der Wienerschnitzel in Colorado Springs and the rapes of female employees of the restaurants. At trial, ten eyewitnesses identified Graham with varying degrees of certainty, a jacket seized from Graham's car was identified as the jacket worn in the first rape-robbery, and an informant, Robert Reddick, corroborated the identification of Graham. Reddick testified that he was driving around with Graham on the nights of the two Taco Bell robberies and dropped Graham off at the restaurants when Graham decided to rob them. Reddick stated that Graham later told him that Graham committed the rapes during the course of the robberies. Reddick testified that he refused to participate the night that the Der Wienerschnitzel was robbed, but that he knew Graham intended to rob the restaurant and that Graham called him later requesting a ride because a Volkswagen Graham was driving had broken down. The robber of the Der Wienerschnitzel left the restaurant in a Volkswagen belonging to one of the robbery victims. The Volkswagen, which had a faulty carburetor, later was discovered abandoned on the street.

On direct, cross- and re-direct examination, Reddick stated that he had not agreed to testify against Graham as part of an agreement with the police or the district attorney to dismiss charges against him.[1] In defense, Graham presented police detective Eldridge, who testified that eight charges had been pending against Reddick arising from four aggravated robberies at the time that Reddick informed on Graham. When Reddick offered information about who committed the three rape-robberies, a deputy district attorney authorized Reddick's immunity against prosecution for the three incidents as long as Reddick had not personally participated in the rapes. Eldridge testified that Reddick accepted an agreement that the bond for his pending charges would be reduced and all charges would be dropped if he testified truthfully regarding the four robberies he had been charged with and the three rape-robberies. In rebuttal the prosecution presented another police detective, who testified that he made the first agreement to drop Reddick's charges before he knew of Reddick's information about the rape-robberies. He also testified that later in the same interview Reddick told him about the rape-robberies but that he was not present during all of detective Eldridge's interview with Reddick, which Eldridge had testified resulted in Reddick's agreement to testify against Graham.

Seven months after judgment issued, the defendant filed a motion for a new trial based on newly discovered evidence. The defendant maintained that he just had discovered that Reddick had perjured himself when he asserted there was no agreement for his testimony and that the prosecution knew or should have known of Reddick's perjury.[2] Under *DeLuzio v. People*, 177 Colo. 389, 494 P.2d 589 (1972), the prosecution's knowing or reckless use of false or mistaken testimony warrants reversal of the defendant's conviction. At the hearing on the motion for new trial, the two police detectives again testified that an agreement was made with Reddick to drop the charges against him in exchange for testimony against his co-defendants in those cases, and against Graham in the case involving the rape-robberies, and that the district attorney's office approved the agreement. Reddick's lawyer testified that testimony against Graham was one element of the bargain Reddick made with the police and the district attorney's office. Several deputy district attorneys testified that they either knew or did not know at various times that the agreement with Reddick required testimony against Graham as well as Reddick's co-defendants. The deputy district attorney who tried the case against Graham did not know that the arrangement with Reddick required him to testify against Graham.

The district court denied the motion for new trial. The court found that Reddick's agreement required Reddick to testify against Graham, but concluded that confusion in the district attorney's office may have led Reddick himself to be uncertain whether he had to testify. The court determined that, although the deputy district attorney who prosecuted the case should have known of the agreement with Reddick, the case could be distinguished from *DeLuzio*. The court found that the evidence against Graham apart from Reddick's testimony was "overwhelming" and that the jury was presented with evidence of the agreement with Reddick, so any further evidence of the agreement would have been cumulative. The court also

---

**1.** In response to the district attorney's questions about why he was testifying, Reddick stated that he had been threatened, apparently by someone on behalf of Graham, and that he did not agree with Graham committing rapes during robberies while he, Reddick, was left with the car or acting as a look-out.

**2.** The defendant asserted as a second basis for his motion for new trial that the district attorney had failed to provide him with a copy of a police report from the robberies Reddick was charged with. Graham claimed that this report constituted newly discovered exculpatory evidence that the district attorney should have given him. The district court concluded that the report would have had minimal value to impeach Reddick, and the defendant has not appealed that decision.

questioned whether the existence of the agreement with Reddick and the district attorney's knowledge of it were newly discovered evidence because the defense had a copy of the police report outlining the agreement before the trial.

The court of appeals affirmed the district court ruling, holding that the defendant failed to meet the requirements of a motion for new trial on the basis of newly discovered evidence because he knew or could have discovered with diligence the existence of the agreement at the time of trial, and that further evidence regarding the agreement with Reddick would have been "merely cumulative and impeaching." We granted certiorari to consider whether the defendant's claim, improperly raised in a motion for new trial based on newly discovered evidence, constituted a reviewable allegation of plain error and whether the prosecution's failure to correct Reddick's statements denying an agreement was reversible error.

■ Reddick's testimony denying an agreement to testify against Graham, if false, violated Graham's right to a fair trial under the Fourteenth Amendment to the United States Constitution. *DeLuzio v. People,* 177 Colo. 389, 494 P.2d 589 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).[3] It is irrelevant that the deputy district attorneys who prosecuted the case had no actual knowledge of the agreement because they had possession of the same police report that informed the defendant of the agreement and other members of the district attorney's office were aware of the agreement.

**3.** As the United States Supreme Court stated in *Napue v. Illinois:*

The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

The knowledge and actions of deputy district attorneys are imputed to the district attorney, *Corr v. District Court,* 661 P.2d 668, 672–73 (Colo.1983); *People v. Castro,* 657 P.2d 932 (Colo.1983), and may also be imputed to other agents of the district attorney, who "function only by virtue of the district attorney's authority...."[4] *Corr,* 661 P.2d at 673. *Cf. Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (assistant U.S. attorney responsible to know of promises given informant by another assistant U.S. attorney). The prosecution's use of false testimony "recklessly or without regard or inquiry as to the truth of the facts asserted" violates a defendant's rights to due process and requires reversal of his conviction. *DeLuzio,* 177 Colo. at 396, 494 P.2d at 593.

■ The defendant failed to raise as error in a timely motion for new trial the prosecution's use of testimony about the agreement. At the time of trial, defense counsel had the police report outlining Reddick's agreement and knew that the district attorney's office also had the report. Therefore, the district attorney's knowledge of the agreement did not constitute newly discovered evidence because the defendant and his counsel should have known of it if they exercised diligence to discover all favorable evidence before and during the trial. *See People v. Gutierrez,* 622 P.2d 547, 560 (Colo.1981); *People v. Scheidt,* 187 Colo. 20, 22, 528 P.2d 232, 233 (1974). Thus, the issue presented in this appeal was not properly raised in the defendant's motion for a new trial.

360 U.S. at 269, 79 S.Ct. at 1177.

**4.** We here impute the knowledge of one deputy district attorney who investigated this case to another deputy district attorney who prosecuted it. Under other circumstances, the knowledge of each deputy district attorney may not be imputed to every other deputy district attorney in the district. *See Cleary v. District Court,* 704 P.2d 866 (Colo.1985). In the present situation, however, both deputy district attorneys exercised substantial control over the prosecution of the case, so the knowledge of each is imputed to the other.

■ Where an error has not been properly brought to the attention of the court below, it may be considered on appeal only if it is plain error, *i.e.*, a defect "affecting substantial rights...." Crim.P. 52(b).[5] Such defects have been described as errors that are "obvious and grave." *People v. Peterson*, 656 P.2d 1301, 1305 (Colo.1983); *People v. Mills*, 192 Colo. 260, 263, 557 P.2d 1192, 1194 (1976). As noted above, *supra* at 508, the prosecution's knowing use of false testimony affects a defendant's right to a fair trial under the Fourteenth Amendment to the United States Constitution. Therefore, the error claimed by the defendant is cognizable as plain error.

■ Ordinarily, plain error requires reversal only if there is a reasonable possibility that it contributed to the defendant's conviction. *Ramirez v. People*, 682 P.2d 1181, 1183 (Colo.1984); *People v. Barker*, 180 Colo. 28, 32–33, 501 P.2d 1041, 1043 (1972). However, if the asserted error is of constitutional dimension, reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *People v. Myrick*, 638 P.2d 34 (Colo.1981); *Germany v. People*, 198 Colo. 337, 599 P.2d 904 (1979).[6] We conclude that the prosecution's allowing testimony about the scope of the agreement with Reddick, if a misrepresentation, was harmless beyond a reasonable doubt under the facts of this case.[7]

The district attorney's acknowledgement of the scope of the agreement would have contributed little to the impeachment of Reddick. Two police officers, one presented by the prosecution and one presented by the defense, testified about the agreement made with Reddick. Reddick's testimony contained inherent features of credibility because of his corroboration of details testified to by the eyewitnesses.[8] In addition, Reddick's testimony only corroborated the identification made by eyewitnesses and physical evidence.

■ The trial court's finding that Reddick's agreement required him to testify against Graham but that Reddick was justifiably confused about the scope of the

---

**5.** Crim.P. 52 provides:
　　(a) Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
　　(b) Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

**6.** The standards for reversal under the plain error and constitutional error doctrines are quite similar in practice. In *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the Supreme Court noted, "There is little, if any, difference between our statement in *Fahy v. Connecticut* [375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)] about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Therefore, we have sometimes examined error both plain and constitutional without specific reference to the "harmless beyond a reasonable doubt" standard. *See, e.g., People v. Mattas*, 645 P.2d 254 (Colo.1982) (failure to instruct jury on *mens rea* element of crime charged).

**7.** Our conclusion is consistent with the analysis in *Napue v. Illinois*, where the United States Supreme Court looked to the record of the case to determine whether the prosecutor's knowing use of false testimony in violation of the defendant's Fourteenth Amendment rights could have affected the outcome of the trial and therefore constituted reversible error. 360 U.S. at 272, 79 S.Ct. at 1178.

**8.** Reddick knew that the Volkswagen stolen from one of the Der Wienerschnitzel robbery victims broke down, although the police detectives assumed that the robber parked it intentionally where it was found. In addition, Graham acknowledged as his a jacket identified as the jacket worn in the first Taco Bell robbery. The first rape victim testified that during the robbery the jacket bore a patch, no longer there, with the name "Michael" on it. Reddick also identified the jacket as Graham's and testified that the name "Michael" was on the missing patch. Other details of Reddick's testimony indicated that he had first-hand knowledge of the events surrounding the rape-robberies.

agreement is supported by the record. Although the prosecution's use of this testimony, if false, would constitute reversible error if there were a reasonable possibility that it contributed to the jury's verdict, we conclude that the testimony was harmless in this case.

Judgment affirmed.