**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Linda L. NEWBROUGH, Defendant–Appellant.**

**No. 89SA280.**

Supreme Court of Colorado, En Banc.

Oct. 9, 1990.

Rehearing Denied Nov. 13, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Williams, Trine, Greenstein & Griffith, P.C., Jean E. Dubofsky, Boulder, for defendant-appellant.

Justice LOHR delivered the Opinion of the Court.

After a trial by jury, Linda Newbrough was found guilty of sexual assault on a child, § 18–3–405, 8B C.R.S. (1986). She now challenges the judgment of conviction on several grounds.[1] We reverse Newbrough's conviction and remand the case for a new trial.

## I.

William and Jeanine D. have two children, A.D. and M.D., who at the time of the alleged assault were ages two and six respectively. During the summer of 1987, Linda Newbrough, the defendant, began babysitting for A.D. and M.D. Newbrough was accused and convicted of sexual assault on a child based on evidence that she stuck her finger into M.D.'s vagina during a weekend in November 1987 when she was babysitting for M.D. and A.D. while William and Jeanine D. were away.

Newbrough challenges her conviction on several grounds: first, that the trial court erroneously admitted M.D.'s videotaped deposition into evidence; second, that the trial court erroneously admitted a videotaped interview of M.D. by Dr. Ruth

---

**1.** Because the defendant challenges the constitutionality of §§ 13–25–129, 6A C.R.S. (1987), and 18–3–413, 8B C.R.S. (1986), we have original appellate jurisdiction in this matter. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

Kempe; third, that the trial court erroneously admitted hearsay statements made by M.D. to her mother and a therapist; fourth, that the trial court erroneously admitted expert testimony regarding M.D.'s truthfulness on a specific occasion; and fifth, that sections 13–25–129, 6A C.R.S. (1987), and 18–3–413, 8B C.R.S. (1986), violate the constitutional doctrine of separation of powers.[2] We will address each of these contentions in turn.

## II.

In response to a prosecution motion, the court ordered a videotaped deposition of M.D. to be taken. The deposition was conducted at the C. Henry Kempe Center for the Treatment and Prevention of Child Abuse and Neglect[3] on September 16, 1988. M.D. was questioned by Dr. Susan Van Scoyk, a court-appointed child psychiatrist whom M.D. had not previously met. The questioning was videotaped. The judge, the court reporter, the prosecutor, a police investigator, the defense counsel and the defendant were in an adjacent room, able to view the questioning but not visible to the persons in the room where the deposition was being taken. Van Scoyk had an earpiece through which she could hear comments or questions from the lawyers. Van Scoyk also had lists of questions provided by the prosecutor and the defense counsel.

## A.

Newbrough initially contends that the videotaped deposition was not properly admissible under section 18–3–413, 8B C.R.S. (1986), the statute providing for the taking and use of videotaped depositions. Section 18–3–413 provides:

(1) When a defendant has been charged with an unlawful sexual offense, as defined in section 18–3–411(1),[4] and when the victim at the time of the commission of the act is a child less than fifteen years of age, the prosecution may apply to the court for an order that a deposition be taken of the victim's testimony and that the deposition be recorded and preserved on video tape.

(2) The prosecution shall apply for the order in writing at least three days prior to the taking of the deposition. The defendant shall receive reasonable notice of the taking of the deposition.

(3) Upon timely receipt of the application, the court shall make a preliminary finding regarding whether, at the time of trial, the victim is likely to be medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence. Such finding shall be based on, but not be limited to, recommendations from the child's therapist or any other person having direct contact with the child, whose recommendations are based on specific behavioral indicators exhibited by the child. If the court so finds, it shall order that the deposition be taken, pursuant to rule 15(d) of the Colorado rules of criminal procedure, and preserved on video tape. The prosecution shall transmit the video tape to the clerk of the court in which the action is pending.

(4) If at the time of trial the court finds that further testimony would cause the victim emotional trauma so that the victim is medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence, the court may admit the video tape of the victim's deposition as former testimony under rule 804(b)(1) of the Colorado rules of evidence.

2. Newbrough also contends that the trial court should have granted her motion for a new trial based on juror bias and that the trial court imposed an unconstitutional condition of probation. Because we vacate her conviction and order a new trial on other grounds, we do not address these two contentions.

3. The Kempe Center is part of the pediatric department of the University of Colorado Medical Sciences Center according to the testimony of Dr. Ruth S. Kempe, a child psychiatrist at the Kempe Center.

4. Sexual assault on a child, § 18–3–405, 8B C.R.S. (1986), the crime for which Newbrough was charged and convicted, is included within the definition of "unlawful sexual offense" in § 18–3–411(1).

Subsection (3) requires videotaped depositions to be taken in accordance with Crim.P. 15(d), which provides:

If the subpoenaed deponent appears before the judge who ordered his deposition taken and is willing to testify immediately, at the request of the deponent for good cause shown, the judge forthwith shall:

(1) Procure the presence of the prosecuting attorney or one of his deputies;

(2) Procure the presence of each defendant and his counsel;

(3) Take the deposition; and

(4) Upon completion of the deposition, discharge the witness.

If any defendant is without counsel or his attorney fails to attend, the court shall advise him of his right and, unless he elects to proceed without counsel, shall assign counsel to represent him at that hearing only. Depositions shall be taken and transcribed as the court may direct and upon completion shall be lodged with the clerk of the court.

1.

Newbrough contends that M.D.'s deposition was not taken in accordance with Crim.P. 15(d) because questioning was not conducted by the defense counsel and the defendant was not in the room where the questioning took place. We conclude that the procedures followed do not require reversal of the defendant's conviction.

■ The defendant made no objection to the questioning of M.D. by Dr. Van Scoyk rather than by the attorneys. We therefore review the trial court's action under a plain error standard. *Wilson v. People*, 743 P.2d 415, 419 (Colo.1987). Crim.P. 15(d) does not specifically require that questioning be conducted by the attorneys. The requirement that the "presence" of the prosecuting attorney and the defense counsel be procured simply does not address whether the questioning is to be conducted by the attorneys. We are not persuaded that the trial court contravened the requirements of the rule by allowing Dr. Van Scoyk to conduct the questioning, much less that "the error so undermined the fun-

damental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *See Wilson*, 743 P.2d at 420; Crim.P. 52(b) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"); C.A.R. 35(e) ("[t]he appellate court shall disregard any error or defect not affecting the substantial rights of the parties").

We also conclude that the fact that the defendant was in another room and not visible to M.D. during her videotaped deposition testimony does not require reversal as a violation of Crim.P. 15(d). Although the defendant objected to the introduction of the videotaped deposition at trial on confrontation clause grounds, she raised no objection that the procedure for taking the deposition did not comply with Crim.P. 15(d). Under these circumstances, we would reverse the defendant's conviction only if the procedure adopted by the trial court were contrary to the requirements of Crim.P. 15(d) and also constituted plain error. *See, e.g., People v. Cowden*, 735 P.2d 199, 202 (Colo.1987); *Graham v. People*, 705 P.2d 505, 509 (Colo.1985).

Although Crim.P. 15(d) requires that the "presence" of the defendant be procured, we do not read this to mean that the defendant has a right, derived from the rule, to be present in the room where the deposition is taking place. Rather, we hold that the defendant's presence in a room from which he can contemporaneously view the taking of the deposition satisfies the requirement of the rule that the defendant's presence be procured. *See Glendening v. State*, 536 So.2d 212 (Fla.1988); *Commonwealth v. Willis*, 716 S.W.2d 224 (Ky.1986); *State v. Twist*, 528 A.2d 1250 (Me.1987); *State v. Lucero*, 109 N.M. 298, 784 P.2d 1041 (App.1989). The trial court therefore did not violate Crim.P. 15(d), much less commit plain error, in adopting a procedure for taking M.D.'s deposition that placed the defendant in a room where she could see M.D. but M.D. could not see her.

2.

■ Newbrough also contends that the trial court's finding that M.D. was "medi-

cally unavailable" to testify at the time of trial, as required by section 18–3–413(4), was not supported by the record.[5] In granting the prosecution's motion to take a videotaped deposition of M.D., the trial court based its preliminary finding of unavailability under section 18–3–413(3) on the testimony of Dr. Ruth Kempe and Jeanine D. Dr. Kempe examined M.D. and based upon that examination and other information she had about M.D., concluded that testifying would be traumatic for M.D. and would have a lasting effect on her. She explained that M.D. had experienced nightmares, that her schoolwork had suffered and that she had some behavioral problems. M.D.'s mother, Jeanine D., who is a registered nurse, testified that M.D. was extremely upset about the prospect of testifying in court in front of the defendant. M.D. started crying and vomiting while returning home from the Kempe Center with her mother shortly after the possibility of testifying was mentioned by Dr. Kempe.[6] The trial court credited this testimony, concluded that M.D. was medically unavailable to testify and, implicitly, that she was likely to be medically unavailable at the time of trial. The court then ordered the taking of a videotaped deposition pursuant to section 18–3–413.[7] At trial, the court found that M.D. remained medically unavailable and admitted the deposition into evidence.[8]

In *Thomas v. People*, 803 P.2d 144 (Colo. 1990), decided today, we held that a child is medically unavailable if "testifying in front of the defendant would cause the child substantial and long-term emotional or psychological harm." *Thomas*, at 148–149. We conclude that the court's findings of the medical unavailability of M.D. are supported by the evidence and, although not expressed in precisely the same terms as our holding in *Thomas*, meet the legal standard of medical unavailability announced in that case.[9]

■ Newbrough contends, however, that a statement made by M.D. during her deposition that she was willing to testify in court conclusively establishes her availability. Although once during her hour and forty-five minute deposition M.D. stated that she was not afraid to testify in court, she also stated that she was afraid to see the defendant in court. Moreover, a child's expressed willingness to testify is not decisive. The trial court is charged with considering all of the evidence and determining whether a child is unavailable under the applicable legal standard. In this case,

5. Newbrough objected to the admission of the videotaped deposition at trial on the ground that M.D. was not medically unavailable.

6. Jeanine D. testified as follows:
   We then left the Kempe Center and got into the car, and [M.D.] said, "That means I'm going to have to see Linda?" and I said "Yes, it does. You have got to tell what happened, [M.D.], so we can straighten this all out." And the child started to vomit, projectile vomiting as we were driving in the car.

7. The court ruled as follows:
   The Court further finds that the victim in this case is about seven years old at the present time, that she has exhibited in the past extreme symptoms of anxiety, to the point where she has vomited, has done poorly in her school work, has expressed great trauma when she was aware of the fact that she had to be in the same room testifying in the presence of the Defendant.
   The Court finds that this testimony came from her mother, who, although she is her mother, is also a trained professional nurse; and also from Dr. Kempe, who is not only a psychologist, not only deals with the psychiat-

ric problems of children, but is a medical doctor.
   That testimony the Court accepts, and based upon that testimony, the Court finds at the present time that the victim is medically unavailable to testify.
   The Court, pursuant to statute, will review that status of the child at the time of trial; but, based upon those findings, the Court will permit the District Attorney to take a video deposition of the child in a place to be approved by the Court and under conditions which are to be approved by the Court.

8. The court found as follows:
   The Court finds that the child remains medically unavailable to testify and adopts its previous statement concerning the reasons for its decision.

9. Dr. Kempe testified that testifying in open court would be traumatic for M.D. and would have a lasting effect on her. The trial court specifically "accepted" Dr. Kempe's testimony, and we construe that to include a finding that the adverse effect of testifying in front of the defendant would be long lasting.

we conclude that the trial court's determination of unavailability is supported by the record.

### B.

Newbrough also contends that admission of the videotaped deposition violated her confrontation rights under the sixth amendment to the United States Constitution.[10] In *Maryland v. Craig*, — U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the United States Supreme Court held that in order to avoid violating the defendant's right to confrontation, use of closed-circuit television to project testimony of a child witness into the courtroom must be necessary to protect the child from emotional trauma that would result from testifying in the presence of the defendant and must provide sufficient guarantees of reliability.

In *Thomas v. People*, 803 P.2d 144 (Colo. 1990), we held that a videotaped deposition admitted into evidence after an individualized finding of "medical unavailability" pursuant to section 18–3–413(4) meets the necessity requirement of *Craig*. The remaining question is whether the procedure used in taking M.D.'s deposition included sufficient guarantees of reliability.[11] In *Thomas*, we concluded that guarantees were sufficient when the children were found competent to testify; the children were administered an oath of sorts; the defendant, the attorneys, the judge and the jury were able to observe the children; and without objection by either party, the children were questioned by therapists, one chosen by the prosecution and one by the defense counsel. *Thomas*, at 151.

Newbrough alleges the following deficiencies in the procedure used in this case: (1) M.D. was not under oath; (2) a therapist, rather than the prosecution and the defense counsel, questioned the child; and (3) the atmosphere of the deposition lacked a minimum of seriousness.

In *Thomas*, we held that so long as a child explained the difference between telling the truth and lying and was impressed with the importance of telling the truth, it was not essential that the child be administered a formal oath. *Thomas*, at 146. Although the trial court did not administer a formal oath to M.D. at the beginning of her deposition, M.D. was asked to explain the difference between the truth and a lie and M.D. promised to tell the truth.[12]

In *Thomas*, we also held that if the parties agree that a deposition will be taken under section 18–3–413 in which therapists, rather than attorneys, question the child, the defendant cannot object on appeal that his confrontation clause rights were violated by introduction of the deposition at trial. In this case, Newbrough did not object to the taking of the videotaped deposition or to the procedures adopted for taking that

---

**10.** The sixth amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The federal constitutional right is applicable to state criminal proceedings through the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The defendant also asserts that the admission of the videotaped deposition violated her confrontation right under the Colorado Constitution, which guarantees that "[i]n criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face." Art. II, sec. 16. We conclude that our analysis of the federal constitutional right applies with equal force to the confrontation right under the Colorado Constitution.

The defendant also contends that the admission of the videotaped deposition violated her right to due process. *See* U.S. Const. amend. XIV; Colo. Const. art. II, sec. 25. We see no basis to conclude, however, that the due process clauses of the United States and Colorado Constitutions provide protection additional to that provided by the confrontation clauses with respect to the admission of videotaped depositions, under the facts of this case.

**11.** See *Thomas*, at 150, n. 14, and accompanying text, concerning the use of the term "sufficient guarantees of reliability."

**12.** Dr. Van Scoyk asked M.D. if she "knew what the truth is." The child responded, "Yes, the truth is what really happens." M.D. then volunteered, "A lie is what really didn't happen." She acknowledged that to tell the truth is the best thing to do and answered "yes" in response to the question "Will you promise to tell the truth today about things that happened?"

deposition, including the use of the therapist to conduct the questioning.[13]

We recognize, however, that in this case the atmosphere of the deposition raises doubts about whether the procedure employed included sufficient guarantees of reliability. The deposition lasted approximately an hour and forty-five minutes. M.D. was unresponsive most of the time. She wanted to color, to wash the table or to play. She frequently exhibited awareness of the video camera and sometimes tried to evade it. When she spoke with Van Scoyk, she insisted that Van Scoyk pretend to be "grandma" while she pretended to be the mother of several dolls and that they pretend to talk on the phone or to be on an airplane. About halfway through the deposition, they took a break because M.D. was impatient and hungry. At times, however, M.D. was relatively responsive and gave quite explicit answers to Van Scoyk's questions about Newbrough's alleged conduct. Toward the end of the deposition, when Van Scoyk was trying to complete the lists of questions provided by the attorneys, M.D. became impatient, repeatedly told Van Scoyk to ask the questions faster and provided brief answers.

On the remand for a new trial necessitated by the error discussed in section III of this opinion, the trial court should determine whether the procedure employed in taking this videotaped deposition included sufficient guarantees of reliability to permit the deposition to be admitted without violating Newbrough's confrontation rights. The trial court should make explicit findings in that regard.

## III.

During Newbrough's trial, the court also admitted the videotape of an interview of M.D. conducted by Dr. Kempe on December 8, 1987. This was not a videotaped deposition made pursuant to section 18-3-413. Neither the defendant nor her counsel was present when the interview took place. The trial court admitted this videotape into evidence under the general child hearsay provision, § 13-25-129, 6A C.R.S. (1987), after finding the videotaped statements to be reliable and corroborated.

Newbrough contends that child victim videotapes may be admitted only if they are videotaped depositions made in compliance with section 18-3-413.[14] We agree. A videotaped interview of a child victim is undoubtedly more powerful, and thus potentially more prejudicial, than testimony of a witness about what the child said. *See Hochheiser v. Superior Court,* 161 Cal. App.3d 777, 208 Cal.Rptr. 273, 279 (1984). Without the proper safeguards, a videotaped interview can also be used to present slanted or distorted testimony. *See Strickland v. State,* 550 So.2d 1042, 1051 (Ala.Cr. App.1988). Camera angles and lighting can affect the jurors' impressions of a witness' demeanor, and the use of videotape or closed-circuit television may enhance the credibility of a witness. *Hochheiser,* 208 Cal.Rptr. at 278-79. There is reason, therefore, to require greater safeguards for the admission of videotaped hearsay statements than for hearsay statements presented through the testimony of a witness.

---

**13.** At trial, Newbrough objected to admission of the videotaped deposition on the ground that M.D. was not "medically unavailable" to testify within the meaning of section 18-3-413(4).

**14.** At trial, Newbrough objected to the admission of the videotaped interview on the ground that the videotaped statements were not corroborated as required by § 13-25-129. Newbrough did not object to the interview's admission on the ground that it had not been taken in compliance with § 18-3-413.

When a defendant does not raise an objection at trial, our review is limited to whether the trial court committed plain error. *People v. Cowden,* 735 P.2d 199, 202 (Colo.1987). If the

asserted error is constitutional, however, "reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt." *Graham v. People,* 705 P.2d 505, 509 (Colo.1985). Although the principal error alleged by Newbrough is that the trial court improperly admitted the videotaped interview under § 13-25-129, she also contends that admission of the videotape violated her confrontation clause and due process rights. *See generally Maryland v. Craig,* — U.S. —, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). We, therefore, elect to review the alleged error using the harmless beyond a reasonable doubt standard.

In 1983, the Colorado General Assembly enacted both section 13–25–129,[15] Ch. 168, sec. 1, § 13–25–129, 1983 Colo. Sess. Laws 629, 630, and section 18–3–413, Ch. 197, sec. 4, § 18–3–413, 1983 Colo. Sess. Laws 693, 694. The former makes special provision for admission in criminal proceedings of out-of-court statements made by a child, describing certain sexual acts of which the child has personal knowledge, when the statements are "not otherwise admissible by a statute or court rule." § 13–25–129(1). It makes no specific mention of videotaped statements. Section 18–3–413, on the other hand, provides in detail for videotaped depositions of child sexual abuse victims and specifies the circumstances in which they may be taken, the procedures to be followed, and the conditions to their admissibility into evidence in sexual offense cases. As a more specific statute detailing the manner of presentation of videotape evidence, section 18–3–413 controls over general provisions covering the same subject matter. *People v. District Court*, 731 P.2d 720, 721 (Colo.1987); *People v. Weller*, 679 P.2d 1077, 1082 (Colo. 1984).

Section 18–3–413 reflects legislative awareness of the probable great impact of hearsay statements of a child victim of sexual assaults when recorded on videotape. It incorporates the requirements of the presence of the defendant, the judge and prosecution and defense counsel as well as the opportunity for cross-examination, (*see* Crim.P. 15(d), incorporated in § 18–3–413(3)), in order to assure that appropriate procedural protections are afforded to a defendant against whom such a

videotape may be offered. We believe that section 18–3–413 was intended to govern the introduction of all videotaped statements obtained from child sexual abuse victims and that section 13–25–129 is not applicable to such evidence. *Cf. People v. Diefenderfer*, 784 P.2d 741, 751–52 (Colo. 1989) (section 13–25–129 controls over the more general provision of CRE 803(24) in specifying the requirements for admission of hearsay statements of child sexual abuse victims).

Because of the potential for prejudice inherent in videotaped testimony, we are unable to conclude that the admission of the videotaped interview of M.D. by Dr. Kempe was harmless beyond a reasonable doubt.[16] The interview was lengthy and contains highly damaging statements by M.D. describing the incident with which the defendant was charged. Accordingly, we remand the case for a new trial with directions to exclude the videotaped interview of M.D. by Dr. Kempe. Of course, Dr. Kempe may testify as to M.D.'s statements during the interview if the trial court finds that those hearsay statements are admissible under section 13–25–129.

## IV.

Newbrough also contends that the trial court erroneously admitted hearsay statements made by M.D. to her mother on the days following the alleged assault and statements made to Christy Reed, a psychotherapist, on November 24, 1987, three days after the alleged assault. These statements were admitted under section 13–25–129.[17] Because we reverse the de-

15. § 13–25–129 was amended in 1985 and 1987, but has not changed in any fundamental respect. *See* Ch. 105, sec. 1, § 13–25–129 and Ch. 138, sec. 13, § 13–25–129, 1987 Colo. Sess. Laws 558, 815; Ch. 154, sec. 5, § 13–25–129 and Ch. 164, sec. 1, § 13–25–129, 1985 Colo. Sess. Laws 676, 714.

16. Because we hold that admission of the videotaped interview violated statutory requirements, we need not address the defendant's constitutional challenges. Even if the only error in admission of the evidence were a statutory violation rather than a constitutional one, however, we are convinced that plain error existed under the more demanding standard for reversal ap-

plicable in such circumstances. *See Wilson v. People*, 743 P.2d at 419–20 ("error or defect in trial proceedings to which an accused fails to make a contemporaneous objection will not be the basis for reversal unless it casts serious doubt upon the basic fairness of the trial itself").

17. § 13–25–129 provides in pertinent part:

(1) An out-of-court statement made by a child ... describing any act of sexual contact ... performed ... on ... the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal ... proceedings in which a child

fendant's conviction on another ground, we do not consider it necessary to decide whether the trial court erred in admitting these statements. In determining the admissibility of these statements, should they be offered under section 13–25–129 on retrial, the trial court should give particular attention to the recent decision of the United States Supreme Court in *Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and our own recent decisions in *Thomas, Stevens v. People*, 796 P.2d 946 (Colo.1990), *Diefenderfer*, and *People v. District Court*, 776 P.2d 1083 (Colo.1989), as they relate to the criteria for admissibility under that statute. The court should also make detailed findings with respect to each of the statutory criteria for admissibility.

## V.

During direct examination of psychotherapist Reed, the following exchange took place:

Q: All right, Miss Reed, you have been counseling children, abused children, for some four years now. In terms of consistency or inconsistency, how did [M.D.], her reactions, her demeanor and emotions when she was describing this, how did this little girl compare with the other little girls that you have counseled and interviewed?

A: I believe that her behavior and the content of what she was telling me was very consistent with other children that I've seen.

Newbrough argues that this exchange amounts to an impermissible comment by an expert regarding the child's truthfulness on a specific occasion. This same general issue is likely to arise on retrial, although the question and answer may not be identically phrased. Therefore, we elect to offer limited guidance on this matter as well.

In *People v. Gaffney*, 769 P.2d 1081 (Colo.1989), we held that the trial court erred in admitting testimony by an expert that the history of acts of anal intercourse related by a child victim was "very believable." In that case, we concluded that there was an unacceptable risk that the jury may have interpreted the expert's statement to mean that the expert thought the child was telling the truth on a particular occasion when he named the defendant as the perpetrator of the sexual assault. *Id.* at 1087–88; *see also Tevlin v. People*, 715 P.2d 338, 341 (Colo.1986) (trial court erred in admitting testimony that an expert believed that the victim was telling the truth); CRE 608(a) (credibility of witness can be attacked by evidence in the form of opinion concerning character for truthfulness or untruthfulness, but only after character of witness for truthfulness has been attacked).

In this case, Reed's testimony could be interpreted as a comment on the believability of M.D.'s statements to Reed. *Cf. People v. Snook*, 745 P.2d 647, 648–49 (Colo. 1987) (expert testimony stating and elaborating on the premise that children tend not to fabricate stories of sexual abuse was an expert opinion that the child was almost certainly telling the truth); *but cf. People v. Jensen*, 747 P.2d 1247, 1250 (Colo.1987) (statement of social worker that it took a lot of courage for child victim to testify was not an opinion as to truthfulness of witness). We need not resolve this issue

is a victim of an unlawful sexual offense, as defined in section 18–3–411(1) ... if: (a) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (b) The child ... (II) [i]s unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

We have upheld § 13–25–129 against confrontation clause challenges in *People v. Diefenderfer*, 784 P.2d 741, 746–48 (Colo.1989) and *People v. District Court*, 776 P.2d 1083 (Colo.1989). Re-

cently, the United States Supreme Court decided *Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a criminal case holding that admission of hearsay statements of a child victim of sexual abuse pursuant to Idaho's residual hearsay objection violated the sixth amendment's confrontation clause because the statements lacked particularized guarantees of trustworthiness. We find nothing in *Idaho v. Wright* that casts doubt on our prior decisions concerning the constitutional sufficiency of § 13–25–129.

definitively because we reverse the defendant's judgment of conviction for other reasons. On retrial, however, the prosecution and the trial court should guard against testimony that could be interpreted as an expert's evaluation of the child's truthfulness on a particular occasion.

## VI.

■ Finally, Newbrough argues that sections 13–25–129 and 18–3–413, governing the admission of hearsay statements of child sexual abuse victims and the admission of videotaped depositions, violate the separation of powers provisions of the Colorado Constitution.[18]

A statute governing procedural matters in criminal cases that conflicts with a rule promulgated by this court is a legislative invasion of this court's rulemaking powers. *J.T. v. O'Rourke Tenth Judicial Dist.*, 651 P.2d 407, 410–11 n. 2 (Colo.1982). The legislature, however, may enact a "substantive" rule. *Id.* In *People v. Diefenderfer*, 784 P.2d 741 (Colo.1989), we upheld section 13–25–129 on the basis that it "effects the substantive policy of protecting certain witnesses—in this case child witnesses—from the sometimes traumatizing effect of facing their abusers openly in court" and thus does not "conflict with this court's rulemaking authority." *Id.* at 753. We reaffirm that holding and reject the separation of powers challenge to section 18–3–413 for the same reason.

## VII.

In sum, we hold that the trial court erred in admitting the videotaped interview of M.D. by Dr. Kempe. We reverse the judgment of conviction and remand the case for a new trial with directions that the trial court make specific findings concerning the sufficiency of the guarantees of reliability

before admitting M.D.'s videotaped deposition pursuant to section 18–3–413.

Justice VOLLACK does not participate.

---

**18.** Article III of the Colorado Constitution provides:

The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Article VI, section 21, of the Colorado Constitution provides in part:

The supreme court ... shall make and promulgate rules governing practice and procedure in civil and criminal cases.