The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jorge E. MELENDEZ, Jr.,
Defendant–Appellant.

No. 01CA0888.

Colorado Court of Appeals,
Div. I.

April 24, 2003.

Rehearing Denied June 12, 2003.

Certiorari Granted Dec. 1, 2003.

Ken Salazar, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

M. Colin Bresee, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Jorge E. Melendez, Jr., appeals the judgment of conviction entered on a jury verdict finding him guilty of multiple counts of aggravated incest, sexual assault on a child, sexual assault on a child-pattern of abuse, and sexual assault on a child under fifteen by one in a position of trust. We reverse and remand for a new trial.

A seven-year-old girl told her grandparents that she had been sexually abused on several occasions by defendant, who was then married to the girl's mother. The child later told her mother about the abuse and described the incidents to a child advocacy center interviewer in a videotaped interview.

The jury was shown the videotape and also heard testimony by the child, her mother, her grandfather, and the interviewer. Defendant testified that he had never abused the child and offered expert testimony to support his theory that her allegations were fabricated.

### I.

Defendant first contends that the trial court erred in refusing to allow testimony by a defense witness who was in the courtroom

during part of the testimony of a prosecution witness, contrary to the court's sequestration order. We agree.

## A.

■ The purposes of a sequestration order are to prevent a witness from conforming his or her testimony to that of other witnesses and to discourage fabrication and collusion. *People v. Wood,* 743 P.2d 422 (Colo.1987); *People v. Dashner,* 77 P.3d 787, 2003 WL 549108 (Colo.App.2003); *see also* CRE 615; *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)(sequestering witnesses restrains them from tailoring their testimony to that of earlier witnesses and aids in detecting testimony that is less than candid).

■ Sanctions that may be imposed for violation of a sequestration order include citing the witness for contempt, permitting comment on the witness's noncompliance in order to reflect on his or her credibility, excluding or striking the witness's testimony, and declaring a mistrial. *People v. P.R.G.,* 729 P.2d 380 (Colo.App.1986).

■ In deciding whether to impose sanctions for violation of a sequestration order, a trial court is to consider three principal factors: (1) the involvement, or lack thereof, of a party or the party's counsel in the witness's violation of the order; (2) the witness's actions and state of mind in violating the order, and whether the violation was inadvertent or deliberate; and (3) the relationship between the subject matter of the violation and the substance of the disobedient witness's testimony. *People v. P.R.G., supra.*

Most of the reported Colorado cases on violation of a sequestration order in a criminal trial involve allegations that the trial court erred in allowing testimony by a prosecution witness who violated a sequestration order or in denying a mistrial on that basis. In those circumstances, the appellate courts have consistently upheld the trial court's ruling as a proper exercise of discretion. *See, e.g., People v. Drake,* 785 P.2d 1257 (Colo. 1990); *People v. Wood, supra; Cruz v. People,* 149 Colo. 187, 368 P.2d 774 (1962); *People v. Dashner, supra; People v. Scarlett,* 985 P.2d 36 (Colo.App.1998); *People v. DeBoer,* 829 P.2d 447 (Colo.App.1991); *People v. Johnson,* 757 P.2d 1098 (Colo.App.1988); *People v. Shipman,* 747 P.2d 1 (Colo.App. 1987); *People v. P.R.G., supra.*

■ In contrast to those cases, this case involves the exclusion of a witness called by the accused in a criminal case. Thus, it implicates the fundamental right of criminal defendants to call witnesses on their own behalf, *see* Colo. Const. art. II, § 16; *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)(defendant's right to present witnesses to establish a defense is a fundamental element of due process of law); *People v. Hampton,* 696 P.2d 765 (Colo. 1985)(same), and, accordingly, raises concerns not present where the exclusion is of a prosecution witness in a criminal case or a witness for either side in a civil case. Further, while abuse of discretion remains the standard for appellate review, the constitutional implications of the sanction necessary affect the determination whether abuse of discretion has been shown.

We are aware of only one Colorado case in which a defense witness in a criminal case was excluded for violation of a sequestration order. In *Vickers v. People,* 31 Colo. 491, 73 P. 845 (1903), the supreme court reversed a conviction based on the trial court's refusal to permit testimony by a defense witness who violated a court order excluding witnesses from the courtroom. Noting that "[t]he prevailing doctrine is that the violation of such an order by witnesses will not deprive the party, whose witness he is, of the benefit of his testimony, if the party himself is without fault," the supreme court concluded that reversal was required because there was "no showing that the defendant was instrumental in procuring the witness to remain in the courtroom, and nothing appears in the record which would justify us in holding that the [trial] court found that the defendant connived at the disobedience of the rule by the witness." *Vickers v. People, supra,* 31 Colo. at 494–95, 73 P. at 846 (quoting *Behrman v. Terry,* 31 Colo. 155, 71 P. 1118 (1903)).

*Vickers* is consistent with more recent cases from other jurisdictions that have re-

versed convictions based on the exclusion of a defense witness who violated a sequestration order without the defendant's complicity or cooperation. *See United States v. Hobbs*, 31 F.3d 918 (9th Cir.1994)(plain error to exclude defense witness, who had entered courtroom while defense counsel had her back to spectators, where there was no evidence that defense counsel had acquiesced in the violation and witness's testimony was neither cumulative nor irrelevant); *Williams v. State*, 258 Ark. 207, 523 S.W.2d 377 (1975)(exclusion of rebuttal witness who had inadvertently violated sequestration order was abuse of discretion even though witness had been present for all of defendant's testimony); *Jiosa v. State*, 755 N.E.2d 605 (Ind.2001)(reversible error to exclude testimony of witness who would have offered alternative explanation for symptoms of victim of alleged child abuse, where defendant was not at fault for violation of sequestration order); *Redditt v. State*, 337 Md. 621, 655 A.2d 390 (1995)(abuse of discretion to sanction asserted violation of sequestration order by excluding testimony of witness concerning improper motive or bias on part of principal prosecution witness); *see also* 3 J. Weinstein et al., *Weinstein's Evidence* ¶ 615[03] (1996).

█ In this case, the trial court granted the prosecutor's pretrial motion for sequestration of all witnesses except a detective, who was allowed to remain as an advisory witness for the prosecution. During trial, after the prosecution had rested and defendant had called three of his four witnesses, the prosecutor informed the court that she had learned from the detective that the remaining defense witness had been in the courtroom during a bench conference and for part of the testimony of the child advocacy center interviewer, a prosecution witness. She asked that the defense witness not be permitted to testify. Defense counsel responded:

Judge, first of all, I had no knowledge whatsoever that any one of my witnesses were in the courtroom. Obviously during the testimony of [the interviewer] I was doing anything but looking in the back of the courtroom. I can represent as an officer of this court that I have always instructed all my witnesses in every single case that I have ever done to wait outside of the courtroom. I told all my witnesses to be on call and to be here at 1:30. I had no idea he was here. I can make that representation as an officer of the court.

Defense counsel also told the court that the witness's presence for part of the interviewer's testimony would not affect his credibility or taint his testimony, because he would not be asked about anything concerning the interview. Rather, the witness would testify about his observations of defendant with the child and the child's mother and the interactions between defendant and the child. Counsel stated that the court "could inquire or admonish or ask questions of" the witness, but that not allowing the witness to testify would severely prejudice defendant.

The prosecutor then informed the court that the detective had seen defendant and the witness "having a discussion which sounded to [the detective] to be about this case." The detective did not address the court, and no one else claimed to have seen the witness in the courtroom.

The next morning, after hearing brief additional argument but without interviewing the witness, the detective, or defendant, the court ruled that the witness would not be permitted to testify:

After considering argument of both the defense and the prosecution, noting the length of time [the witness] was in the courtroom, paid [sic] particular attention that the witness was in the courtroom during the testimony of [the interviewer], the Court is going to not allow the witness to be called for the defense.

We conclude that exclusion of the testimony was an abuse of discretion.

Although the People argue that the trial court "implicitly" considered the three factors listed in *People v. P.R.G., supra*, and that the court "had evidence before it showing that the witness purposely violated the court's sequestration order, that the extent of the taint was significant, and that [defendant] participated in the violation," the record is to the contrary.

In regard to the first and most significant factor under *P.R.G.* and *Vickers,* the only evidence before the court regarding defense counsel's involvement in the violation was counsel's representation, as an officer of the court, that he had no knowledge that the witness was in the courtroom and that he always instructed his witnesses to wait outside the courtroom. Although the court had also been advised by the prosecutor that the witness was seen talking with defendant, we view that statement as insufficient to permit the court to conclude, without further inquiry of defendant or the witness, that defendant was at fault for the witness's violation of the sequestration order, so as to take the case outside the rule of *Vickers.*

The record likewise does not reflect any inquiry regarding the second *P.R.G.* factor— that is, the state of mind of the witness concerning the violation and whether the violation was inadvertent or deliberate. As for the third *P.R.G.* factor, the record does not indicate how long the witness was in the courtroom or what part of the lengthy testimony by the interviewer he may have overheard. Thus, there is no basis for concluding that the witness's testimony, as characterized by defense counsel in his offer of proof, was tainted by or even, as the People contend, "directly related" to the matters to which the interviewer was testifying when the witness was in the courtroom.

In sum, it was an abuse of discretion to impose the extreme sanction of witness exclusion without an inquiry into the factors governing the imposition of such a sanction, and, in particular, without evidence that the defense was at fault for the violation. *See Vickers v. People, supra.*

### B.

■ Because the error at issue here is of constitutional dimension, reversal is required unless we determine that the error is harmless beyond a reasonable doubt. *See Bernal v. People,* 44 P.3d 184 (Colo.2002); *People v. Fry,* 74 P.3d 360, 2002 WL 31477777 (Colo. App.2002).

■ The People bear the burden of proving that the error was harmless beyond a reasonable doubt. If there is a reasonable probability that the defendant could have been prejudiced by the error, the error cannot be harmless. *Blecha v. People,* 962 P.2d 931 (Colo.1998); *People v. Fry, supra.*

■ The excluded witness was one of four witnesses, besides defendant himself, who were endorsed by the defense. None of the other three endorsed witnesses gave testimony that was duplicative or cumulative of the anticipated testimony of the excluded witness as characterized by defense counsel.

Defendant's expert psychologist had previously testified regarding situations that might lead a child to fabricate allegations of sexual abuse. He also answered hypothetical questions regarding interaction between a mother and her child that could lead to such fabrication. The hypotheticals suggest that defendant contemplated subsequently introducing testimony of such interaction in order to support the defense theory concerning the reasons why the child could be fabricating allegations of sexual abuse. In addition, testimony by the excluded witness regarding interaction among defendant, his wife, and the child would presumably have provided independent corroboration of defendant's own testimony on that subject.

During defendant's testimony, a juror sent out a note stating: "I would like to hear [defendant's] opinion concerning [the child's] behavior with her mother." Thus, at least one juror wanted further information about a matter that was raised during the defense expert's testimony and that, according to counsel's offer of proof, would have been the subject of testimony by the excluded witnesses.

Finally, in closing argument, both sides argued reasons why the child should or should not be believed. The prosecutor pointed out that, although the defense expert had theorized that the child would lie because she resented defendant, there had been "no evidence of resentment." The closing arguments demonstrate that evidence supporting or potentially detracting from the child's credibility was of primary importance to both sides.

In these circumstances, we cannot say that the erroneous exclusion of the defense witness was harmless beyond a reasonable doubt. Accordingly, a new trial is required.

## II.

We address two additional contentions raised by defendant that may arise on remand.

### A.

■ Defendant contends that the trial court erred in denying his request for an independent physical examination of the child. We disagree.

■ A trial court presented with a request for an involuntary physical examination of a child sexual assault victim may exercise its discretion to order the examination when the defendant demonstrates a compelling need or reason for it. In exercising this discretion, the trial court must balance the possible emotional trauma, embarrassment, or intimidation to the child against the likelihood of the examination producing material, as distinguished from speculative, evidence. *People v. Chard*, 808 P.2d 351 (Colo.1991); *People v. Woertman*, 786 P.2d 443 (Colo.App. 1989), *rev'd on other grounds*, 804 P.2d 188 (Colo.1991).

In a pretrial motion to compel physical examination of the child, defendant noted that no physical examination of her had been performed and that an examination of her vagina and vaginal area would either reveal exculpatory evidence crucial to his case or, alternatively, "may produce evidence material to the People's case." After hearing oral argument, at which the prosecutor stated that the only physical evidence he would elicit was the child's statement "that she bled and that it hurt," the trial court reviewed the balancing inquiry mandated under *Woertman*, found that the defense motion did "not indicate that material evidence would be produced as opposed to speculative," and accordingly denied the motion.

In *Chard, supra*, the supreme court held that it was not an abuse of discretion to deny a motion for physical examination where evidence produced by such examination would not necessarily prove that the defendant had not previously sexually abused the victim, but would "at best produce results equivocal on the defendant's 'innocence.'" *People v. Chard, supra*, 808 P.2d at 356 (quoting *People v. Nokes*, 183 Cal.App.3d 468, 228 Cal. Rptr. 119 (1986)). Similarly here, a physical examination of the child revealing no vaginal trauma or evidence of vaginal intercourse would not establish that defendant had not sexually abused her.

As defendant points out, the prosecution was required to establish "sexual penetration" as defined in 18–3–401(6), C.R.S. 2002. However, that definition includes "sexual intercourse, cunnilingus, fellatio, analingus, or anal intercourse," and it also provides that "[a]ny penetration, however slight, is sufficient to complete the crime." The child described acts that would satisfy the statutory definition even if there were no evidence of vaginal intercourse. *See also People v. Fierro*, 199 Colo. 215, 606 P.2d 1291 (1980)(independent corroboration of victim's testimony is not essential in criminal prosecution for unlawful sexual acts).

Thus, as in *Chard*, the results of a physical examination here would have been at best equivocal in regard to defendant's innocence. In these circumstances, it was within the trial court's discretion to deny defendant's motion for a physical examination.

### B.

■ We also reject defendant's contention that the court erred in admitting the videotaped interview of the victim without first sufficiently analyzing its reliability.

Section 13–25–129, C.R.S.2002, permits the introduction of otherwise inadmissible hearsay statements by children in sexual assault cases. Prior to the introduction of such a statement, the proponent must demonstrate by a preponderance of the evidence, at a hearing outside the presence of the jury, that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." In addition, either the child must testify at trial or the child must be "unavailable as a witness and there is corroborative evidence of the act which is the subject of the

statement." Section 13–25–129(1)(a)(b), C.R.S.2002; *see People v. Bowers,* 801 P.2d 511 (Colo.1990).

A videotaped interview of a child sexual assault victim that qualifies for admission under § 13–25–129 need not also satisfy the requirements for admission of a videotaped deposition under § 18–3–413, C.R.S.2002. *See* § 18–3–413(5), C.R.S.2002; *People v. Carter,* 919 P.2d 862 (Colo.App.1996).

■ A trial court's ruling on the admissibility of statements under § 13–25–129 will not be overturned absent an abuse of discretion. *People v. Hansen,* 920 P.2d 831 (Colo. App.1995).

Prior to trial, the prosecution gave notice of its intent to introduce various out-of-court statements by the child, including the videotaped interview, pursuant to § 13–25–129. A hearing was held, at which defendant argued that the statements were not spontaneous and were unreliable, and that the prosecution needed to decide at the outset whether the child would be unavailable to testify. He also objected to the admission of the videotape on the basis that it did not comply with the requirements of § 18–3–413 and thus was inadmissible under *People v. Newbrough,* 803 P.2d 155 (Colo.1990).

The trial court analyzed the testimony given at the hearing by the individuals to whom the statements were made and made detailed findings regarding facts and circumstances, including the consistency of the statements, that led it to conclude that the statements were reliable and would be admitted. The court also rejected defendant's contention that the videotape was inadmissible because it did not comply with the § 18–3–413 requirements for videotaped depositions.

The trial court did not abuse its discretion in admitting the videotape. Contrary to defendant's contention at trial, the tape did not have to satisfy the requirements of *People v. Newbrough, supra,* and § 18–3–413, including the requirement that a preliminary finding be made regarding the victim's unavailability. *See People v. Carter, supra* (noting

that *Newbrough* was legislatively overruled by § 18–3–413(5)).

Further we agree with the trial court's assessment of the evidence showing the reliability of the out-of-court statements, including the videotaped statement. Although defendant argues on appeal that the court should have made a "particularized assessment" of the videotape's reliability, he never asked the trial court for such assessment, and the court's findings demonstrate that it was addressing the reliability of the taped statement as well as the other out-of-court statements.

We also disagree with defendant's related contention that the videotaped interview should have been excluded as unfairly prejudicial. Both the child and the interviewer testified at trial and were subject to cross-examination. The substance of the videotaped interview did not differ significantly from the testimony by these and other prosecution witnesses at trial.

The judgment is reversed, and the case is remanded for a new trial.

Judge GRAHAM and Judge PIERCE * concur.