The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Richard D. FRY, Defendant–Appellant.

No. 00CA1459.

Colorado Court of Appeals, Div. II.

Nov. 7, 2002.

Rehearing Denied Jan. 2, 2003.

Certiorari Granted Aug. 4, 2003.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Richard D. Fry, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree murder, second degree assault, and five habitual criminal counts. We reverse and remand for a new trial.

The victim was defendant's live-in girlfriend. When the victim's son telephoned defendant's residence, the victim was unable to speak intelligibly with him. Concerned for her welfare, the son notified the police and asked them to check on her. When the police arrived at the residence, they found the victim in bed, unconscious.

After the victim was transported to the hospital, doctors determined that she was suffering from a severe head injury resulting from blunt trauma to her head, and the doctors performed an emergency operation to alleviate a subdural hematoma. Within the next week, the victim regained consciousness and, according to hospital personnel, was able to follow verbal directions and cues, but she remained unable to speak. She later lapsed into a vegetative state and died of pneumonia.

The prosecution charged defendant with second degree assault and second degree murder stemming from the victim's injuries and death. At trial, the prosecution introduced the testimony of a police officer who had interviewed the victim in the hospital following her surgery. The officer testified that the victim affirmatively nodded in response to his questions about whether defendant had caused her injuries. In addition,

the prosecution read into evidence the preliminary hearing testimony of defendant's uncle, who had died before defendant's trial. The uncle testified that defendant admitted beating the victim and causing her injuries.

This appeal followed defendant's conviction.

I.

■ Defendant first contends that the trial court violated his constitutional right to confront the witnesses against him by admitting his uncle's testimony from the preliminary hearing. We agree.

The right to confront and cross-examine witnesses is guaranteed by the Sixth Amendment and by Colo. Const. art. II, § 16. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Stevens v. People*, 29 P.3d 305 (Colo.2001).

■ The right of confrontation generally requires the prosecution to present evidence through live testimony. The right of confrontation prevents conviction by affidavit, permits cross-examination as a tool for testing the witness's statements and recollections, and allows the jury to judge the demeanor of the witness and thereby better assess credibility. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *People v. Dement*, 661 P.2d 675 (Colo.1983).

Relying upon the right of confrontation under the Colorado Constitution, the supreme court, in *People v. Smith*, 198 Colo. 120, 597 P.2d 204 (1979), precluded the admission at trial of preliminary hearing testimony of an unavailable witness. The court reasoned that the purpose of a preliminary hearing is for a neutral court to screen the case and dismiss it if probable cause has not been established. It also concluded that evidentiary and procedural rules are relaxed at such hearings, and a defendant's right to cross-examine and to introduce evidence in that hearing may be curtailed as to matters, such as credibility, unnecessary to a determination of probable cause. Further, the hearing is not a minitrial that would afford the defendant an opportunity to effect discovery. The court also noted that defense counsel

does not have the same motive to cross-examine concerning witness credibility because the trial court may not make credibility determinations unless the testimony is wholly incredible.

■ *Smith* establishes a bright-line rule that admits of no exceptions, *see People v. Smith, supra* (Rovira, J., dissenting), and in our view, it is dispositive here. A preliminary hearing continues to serve the limited purpose of determining whether probable cause exists. *See* Crim. P. 7(h)(3); *People v. District Court*, 964 P.2d 498 (Colo.1998), *overruled in part by People v. Villapando*, 984 P.2d 51 (Colo.1999). And, none of the remaining reasons upon which the *Smith* court relied are less applicable today than they were when that case was decided.

Contrary to the trial court's conclusion and the People's argument, we do not perceive that *Smith* has been overruled or limited by *People v. Dement, supra*, and *Blecha v. People*, 962 P.2d 931 (Colo.1998). Those cases employ the two-part Confrontation Clause test of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and as pertinent here, require the prosecution to demonstrate that a proffered statement possesses particularized guarantees of trustworthiness. While the *Smith* case, decided before *People v. Dement* and *Blecha v. People*, did not employ that two-part test, the *Smith* court nevertheless essentially determined that preliminary hearing testimony does not possess the requisite trustworthiness. Indeed, *Smith* employed some of the same factors identified in *Dement* and *Blecha* as bearing upon trustworthiness. *See also* CRE 804(b)(1) committee comment (citing *Smith* as setting forth the rule as to testimony given at a preliminary hearing).

■ Accordingly, the trial court erred in admitting the uncle's preliminary hearing testimony. However, because a violation of the Confrontation Clause is subject to constitutional harmless error analysis, we must next determine whether the constitutional error here is harmless beyond a reasonable doubt. *See Bernal v. People*, 44 P.3d 184 (Colo.2002). We conclude that it is not.

■ To find constitutional error harmless, a court must be confident beyond a reasonable doubt that the error did not contribute to the guilty verdict. The constitutional harmless error test is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Blecha v. People, supra.*

■ The People bear the burden of proving that the uncle's hearsay statement did not contribute to defendant's conviction or that the error was harmless beyond a reasonable doubt. If there is a reasonable probability that defendant could have been prejudiced by the error, the error cannot be harmless. *Blecha v. People, supra.*

Here, in addition to the facts recited above, the evidence established that defendant met the victim at a bar near their residence on the night before her admission to the hospital, and the two got into an argument in the bar parking lot. When they left in the victim's car, a neighbor who fortuitously followed the vehicle saw defendant repeatedly strike the victim in the face with the back of his hand as she drove the car.

Other transaction evidence showed that defendant had beaten the victim previously and that he had previously beaten other girlfriends with his fists. A previous girlfriend also testified that defendant admitted beating the victim on this occasion and told her that "this time, he had gone too far." He also told this witness that only she and his uncle knew the truth about what he had done to the victim and that he kept his hands hidden from the view of the deputy who came to check on the victim's welfare. In a previous girlfriend-beating incident, damage to defendant's knuckles had led to his arrest.

In contrast, according to defendant, the victim had come home late the previous evening and was incoherent, vomiting, and barely mobile. As he helped her to the bedroom, she fell down twice, and he thought she was under the influence of drugs. The victim had previously been hospitalized for alcohol poisoning, and aside from an alcohol problem, she was also a cocaine abuser.

Defendant also established that the former girlfriend who testified to defendant's admissions had previously been convicted of forgery and was an alcohol and drug abuser. She also claimed that defendant assaulted her on three previous occasions, but admitted that she never told the police that he was the assailant, instead accusing another man.

Concerning the victim's inculpatory head nods in response to questioning by a sheriff's investigator, the evidence established that medical personnel "didn't really know" if the victim could understand and respond to the investigator's questions when he interviewed her, although they acknowledged that she could follow simple commands and feed herself. The victim had sustained a head injury that caused severe swelling to her brain, and she had undergone surgery to remove a subdural hematoma. Uncontroverted evidence established that such an injury causes stroke-like symptoms and affects the patient's ability to think. Further, the investigator, who questioned the victim without any medical personnel present, had not asked questions to determine whether she was oriented as to time, place, and events.

Defendant also presented evidence impeaching the uncle's testimony, which tended to show that the uncle suffered from deafness, had a previous criminal record, was an alcoholic, and was having a sexual affair with the victim.

The prosecution relied heavily upon the uncle's testimony in closing argument and had previously represented to the trial court that his testimony was "more probative on the issue of what happened to the victim than any other evidence in existence."

On this record, we cannot say beyond a reasonable doubt that the guilty verdict in this case was surely unattributable to the error. While there is corroborating evidence that defendant committed this crime, credibility factors and the other evidence lead us to conclude that there is a reasonable probability that defendant could have been prejudiced by the error.

Accordingly, a new trial is required.

## II.

Because it is likely to arise upon retrial, we next address defendant's contention that the trial court violated his confrontation rights when it admitted, under CRE 807, the victim's nonverbal hearsay statements accusing him of causing her injuries. We disagree with the contention.

Unless an exception or exclusion applies, a hearsay statement, which includes nonverbal conduct intended to be communicative, is not admissible. CRE 801, 802.

To be admissible under the residual hearsay exception, the statement must have circumstantial guarantees of trustworthiness, and the court must determine that: (1) the statement is offered as evidence of a material fact; (2) the statement is more probative on the points for which it is offered than any other evidence that the proponent can procure through reasonable efforts; (3) the general purposes of the rules of evidence and the interests of justice are best served by the admission of the statement; and (4) the adverse party had adequate notice in advance of trial of the proponent's intention to offer it. CRE 807; *People v. Fuller*, 788 P.2d 741 (Colo.1990).

The Confrontation Clause and the hearsay rule and its exceptions protect similar, but not identical interests. Accordingly, the Confrontation Clause may be violated even though statements are admitted under a recognized exception to the hearsay rule. *California v. Green, supra; see also United States v. Oates*, 560 F.2d 45 (2d Cir.1977); *People v. Farrell*, 34 P.3d 401 (Colo.2001).

Otherwise admissible hearsay is generally subject to two requirements for admission under the Confrontation Clause. First, the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use. After the prosecution proves unavailability, it must demonstrate that the statement possesses particularized guarantees of trustworthiness. *Ohio v. Roberts, supra; Blecha v. People, supra.*

A court should consider a number of factors when assessing the trustworthiness of a hearsay statement for Confrontation Clause purposes, which include the nature and character of the statement, the relationship between the parties to the statement, the declarant's probable motivation for making the statement, and the circumstances under which the statement was made. Courts should also consider where and when the statement was made, to whom the statement was made, what prompted the statement, how the statement was made, and what the statement contained. *See Stevens v. People, supra; People v. Fuller, supra; People v. Jensen*, 55 P.3d 135 (Colo.App. 2001).

Particularized guarantees of trustworthiness must be shown from the totality of the circumstances, but "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638, 655 (1990). In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial. A court may not refer to other evidence at trial when assessing the particularized guarantees of trustworthiness. *Idaho v. Wright, supra; Bernal v. People, supra.*

Here, the prosecution offered the nonverbal statements of the victim through the testimony of the police officer who questioned her following the surgery. At a hearing, the officer testified that when he spoke with the victim, the hospital staff told him that "she was not verbal but that she was responding to commands and other things they were doing." When the officer asked the staff if it would be appropriate for him to visit her, they told him "it probably would, and whether or not she can respond to you, we don't really know, but she is responding to some of the things we are doing."

The officer testified that he was acquainted with the victim before this incident, she knew he was a law enforcement officer, and he believed the victim recognized him when he visited her. The officer stated that he began the interview by talking about her family and

felt that she was "beginning to somewhat respond to that" because she focused on him. He then testified as follows:

I asked her if [defendant] had caused the bruising; and she nodded yes. And then I asked her if [defendant] had done this to her; and, again, got an affirmative response. I then asked: Did [defendant] hit you in the head; and again, she nodded to me yes.... And so I asked her: Are you telling me that [defendant] did this to you? And, again, she responded with a nodding of her head affirmatively.

The officer also testified that when he finished his questioning, he told the victim that he would advise her son he had spoken with her and asked her if there was anyone else she wanted him to notify. In response to this statement, the victim shrugged her shoulders.

While the issue is extremely close, we agree with the trial court's decision to admit the evidence. First, we note that the victim did not have any motivation to lie about who caused her injuries. From all accounts, she and defendant were living together, and she had recently had a restraining order against him dropped. Thus, it does not appear that, when she made her statement, she would have wanted to implicate defendant if he had not actually caused her injuries.

Second, the circumstances surrounding her statement indicate that she was capable of understanding and responding to verbal questions. The hospital personnel said that she could respond when they attended to her. And, the officer testified that the victim showed some sign of recognizing him and being attentive to his questions. Further, although he did not ask a question that would require a "no" response, the victim responded in a different fashion by shrugging her shoulders when he inquired whether there was anyone she wanted him to contact.

Third, the victim's perception and identification of the person who caused her injuries were not in question. Clearly, she knew who had beaten her because it must have occurred at close range. Thus, cross-examination to challenge her ability to perceive would be of marginal utility. Cf. *State v. Tyler*, 346 N.C. 187, 485 S.E.2d 599 (1997)(burn victim's nonverbal statements indicating that defendant caused her injuries possessed circumstantial guarantees of trustworthiness because there was no indication that the victim had any reason to lie). *Contra State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993)(shooting victim's nonverbal statements did not possess circumstantial guarantees of trustworthiness because nobody had inquired whether she actually saw the defendant fire the shots, which left doubt about the accuracy of her identification; in this instance, the utility of cross-examination would not be of marginal value).

We acknowledge that the victim's statements were not spontaneous, but were prompted by questioning. We further note that there was reason to question the victim's ability to remember and recount the incident, given the surgery to alleviate the subdural hematoma and the medical staff's equivocation about her condition. However, because courts have considerable leeway in their consideration of appropriate factors, *see Stevens v. People, supra,* these counterpoints are not wholly determinative.

For these reasons, and because the utility of cross-examination is remote in this instance, we conclude that the statements contained adequate guarantees of trustworthiness.

As for the remaining requirements under CRE 807, we note that the victim's statement was offered as evidence of the identity of the perpetrator, a material fact in the case. And, because there were no other witnesses to the beating, her statement was more probative on the points for which it was offered than any other evidence that reasonably could be procured. Further, the general purposes of the rules of evidence and the interests of justice are best served by the admission of this statement, and defendant had adequate notice of the prosecution's intention to offer it into evidence. *See* CRE 807; *People v. Fuller, supra.*

Consequently, we perceive no error in the trial court's decision to admit the evidence. *See People v. Jensen, supra.*

## III.

■ Defendant next contends the trial court erred in denying his motion to dismiss the second degree murder count at the close of the prosecution's case. Specifically, he argues that the evidence was insufficient to support a conclusion that he was aware that his conduct was practically certain to result in the victim's death. We disagree.

■ When the sufficiency of the evidence is challenged on appeal, the reviewing court determines whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Pena,* 962 P.2d 285 (Colo.App.1997).

A person commits the crime of second degree murder if he or she knowingly causes the death of another person. Section 18–3–103(1), C.R.S.2002. "Knowingly" means that the actor is aware that his conduct is practically certain to result in another's death. Section 18–1–501(6), C.R.S.2002; *Moore v. People,* 925 P.2d 264 (Colo.1996).

Here, the neurosurgeon who operated on the victim testified about the extent of her injuries. He noted that she had suffered a severe blow to her head that caused her injury and subsequent death and that she had some bruising in the temple area on the same side of her head as the subdural hematoma. The coroner also testified that a blow to the head most likely caused the victim's injury.

Three of defendant's former girlfriends testified that, during their respective relationships with defendant, he had, on more than one occasion, hit them with his fists. In most instances the blows were to the head or face. And, police officers responding to the emergency calls on those occasions corroborated the girlfriends' testimony.

In addition, one girlfriend testified that during defendant's relationship with the victim, she had witnessed defendant hit the victim and slam her head into the side of a refrigerator. She also testified that defen-

dant admitted beating the victim and told her that "this time he went too far."

Further, one of defendant's neighbors testified that on the evening of the assault, while she was driving home, she came upon defendant's vehicle from behind and followed it for some distance. Her headlights were shining into the car so that she could clearly see activity there. She observed that the victim was driving and defendant was a passenger. She witnessed the defendant strike the victim in the head at least four times while she was following their vehicle. With each blow, the victim's car swerved across the yellow line in the middle of the road.

Viewing the foregoing evidence in the light most favorable to the prosecution, as we must, we conclude that there was sufficient evidence for the jury to determine that defendant was aware that his conduct was practically certain to result in the victim's death. The evidence indicated that defendant had beaten women about the head and face previously and in those episodes had stopped before he caused death. Therefore, we may infer he knew what level of violence was sufficient to accomplish his goals without causing death. Because, in this instance, defendant continued the beating until the victim was dazed and incapable of speaking coherently, and he admitted to his former girlfriend that he had "gone too far this time," a jury could reasonably conclude that he knew that his conduct was practically certain to cause death. *See People v. District Court,* 198 Colo. 70, 595 P.2d 1045 (1979)(one who repeatedly strikes another for ten to fifteen minutes and inflicts a massive head injury on his victim can be held to be aware of the possible fatal consequences of his actions); *cf. People v. Saleh,* 45 P.3d 1272 (Colo.2002) (any object, including a body part, can be a deadly weapon if it is used in a manner capable of producing death or serious bodily injury).

Thus, we perceive no error in the trial court's denial of defendant's motion to dismiss the second degree murder count.

## IV.

■ Defendant next contends that second degree assault is a lesser included offense of

second degree murder when the offenses are based on the same conduct against the same victim. We disagree.

A defendant may be convicted of multiple offenses arising out of a single transaction if he or she has violated more than one statute. Section 18–1–408(1)(a), C.R.S.2002; *Armintrout v. People,* 864 P.2d 576 (Colo.1993); *see also People v. Garcia,* 940 P.2d 357 (Colo.1997). However, double jeopardy and merger principles preclude a conviction for a crime that is a lesser included offense of another crime for which the defendant has also been convicted in the same prosecution. *People v. Leske,* 957 P.2d 1030 (Colo.1998). An offense is lesser included for purposes of double jeopardy and merger when proof of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser offense. *Boulies v. People,* 770 P.2d 1274 (Colo.1989).

If each offense requires proof of a fact not required by the other offense, the offenses are sufficiently distinguishable. To determine whether one offense is included in another, we compare the elements of the statutes involved and not the evidence at trial. *People v. Leske, supra; Armintrout v. People, supra; see also People v. Ramirez,* 18 P.3d 822 (Colo.App.2000).

As noted above, a person commits the crime of second degree murder if he or she knowingly causes the death of another person. The mens rea of "knowingly" requires the actor to be aware that his conduct is practically certain to result in another's death. Sections 18–1–501(6), 18–3–103(1), C.R.S.2002.

As pertinent here, second degree assault requires proof that, acting with an intent to cause bodily injury to another person, the defendant inflicted serious bodily injury to that person or another. Section 18–3–203(1)(g), C.R.S.2002.

The mens rea requirements of the two crimes are different. Second degree murder requires proof defendant knew that death was practically certain to result from the conduct. However, second degree assault requires intent to cause serious bodily injury.

Because proof of the mental state of "knowingly" does not prove the mental state of "intentionally," second degree assault is not a lesser included offense of second degree murder. *See Armintrout v. People, supra* (comparing the elements of the offenses, not the evidence presented); *see also People v. Laurson,* 15 P.3d 791 (Colo.App.2000)(attempted second degree murder is not a lesser included offense of first degree assault because proof of first degree assault does not prove an awareness that death is practically certain to result from the attempted conduct).

## V.

Defendant next contends that, under *People v. Tippett,* 733 P.2d 1183 (Colo.1987), the trial court abused its discretion by failing either to grant his motion for election between the charged offenses or to instruct the jury that it could find him guilty of only one of the two charges. We disagree.

Section 18–1–408(3), C.R.S.2002, provides that:

> When two or more offenses ... are supported by identical evidence, the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned ... the sentences imposed shall run concurrently....

The court has discretion under the statute to either grant or deny a motion to elect. *See People v. Tippett, supra; People v. Bowman,* 669 P.2d 1369 (Colo.1983); *People v. Metcalf,* 926 P.2d 133 (Colo.App. 1996). Accordingly, we review the trial court's decision under an abuse of discretion standard. To constitute an abuse of discretion, the trial court's determination must be manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

Here, we will assume, without deciding, that the two offenses are supported by identical evidence. Even so, although the trial court denied defendant's motion to elect between second degree murder and second degree assault, it nevertheless sentenced him to concurrent sentences as required by § 18–1–

408(3). Thus, we perceive no abuse of discretion.

As for defendant's alternative argument that the trial court should have instructed the jury that it could only convict him of one of the charges, we likewise reject that contention.

Section 18-1-408(1), C.R.S.2002, provides that "[w]hen any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." As discussed above, because second degree murder and second degree assault are separate offenses having different elements, we perceive no error in the trial court's decision to allow the jury to consider both charges.

## VI.

Defendant next contends that the trial court erred in admitting evidence of his prior acts of domestic violence. Specifically, he argues that such evidence violated CRE 404(b) because it was not relevant to any material fact, and the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. We disagree.

Evidence of other crimes, wrongs, or acts is generally inadmissible to prove a defendant's character or show his or her propensity for such conduct. However, it may be admitted under CRE 404(b) for other purposes, such as showing the absence of mistake or accident, motive, intent, preparation, or common plan or scheme. *People v. Rath,* 44 P.3d 1033 (Colo.2002).

Before evidence of other acts is admissible, the prosecution must show that: (1) the evidence relates to a material fact; (2) the evidence has logical relevance in that it adds to the probability that the material fact is true; (3) the logical relevance of the evidence does not depend on an intermediate inference that the defendant has a bad character, which would be employed to support a further inference that the defendant acted in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the prejudicial impact of the evidence. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

Trial courts are necessarily accorded considerable discretion in deciding questions concerning the admissibility of evidence, and an abuse of that discretion will be found only upon a showing that the ruling was manifestly arbitrary, unreasonable, or unfair. *People v. Rath, supra.* Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *See People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995).

Evidence of uncharged crimes has a distinct and unmistakable potential for unfair prejudice, but unfair prejudice within the meaning of the rule refers only to "an undue tendency on the part of admissible evidence to suggest a decision made on an improper basis" and does not mean prejudice that results from the legitimate probative force of the evidence. *People v. Rath, supra,* 44 P.3d at 1043 (quoting *People v. Gibbens, supra,* 905 P.2d at 608).

Here, the prosecution sought to admit the testimony of three of defendant's former girlfriends regarding domestic violence perpetrated against them by defendant. Following a pretrial hearing, the court analyzed the proposed evidence under the four-prong *Spoto* test enunciated above and found it admissible. And, before each witness testified at trial, the court instructed the jury to consider the testimony only as it related to showing intent, identity, knowledge, motive, common plan, method of operation, or the absence of mistake.

We perceive no abuse of discretion. Throughout the trial, defendant maintained that he did not hit the victim and that she sustained her injuries from a fall. Thus, evidence of other acts of domestic violence tends to show defendant's intent, malice, and the absence of mistake or accident, and therefore it relates to a material fact.

The evidence shows that on multiple occasions, defendant hit or battered women with whom he had an intimate relationship. All of the incidents involved angry, violent out-

bursts in which defendant hit the women with his fists, usually in the face, head, or upper body. And, all of the incidents were similar to the transactions alleged to have occurred in this case. Thus, the evidence is logically relevant to a material fact because it makes it more probable that defendant intended the consequences of his actions and that he did not act by mistake or accident on this occasion. The evidence also demonstrates defendant's motive and malice.

In addition, the logical relevance of this evidence is independent of the prohibited inference that defendant is a person of bad character and acted in conformity therewith.

Finally, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Although any such evidence is prejudicial, it is unfair prejudice with which we are concerned. There were no other surviving eyewitnesses to this crime, and domestic violence is a crime that often occurs without witnesses. Thus, the probative value of this evidence is extremely high. Further, the trial court gave the jury a limiting instruction concerning the use of this evidence, thereby minimizing any unfair prejudice. *See People v. Harlan*, 8 P.3d 448 (Colo.2000)(court must afford the evidence the maximum probative weight and minimum prejudicial effect reasonably to be expected).

Accordingly, the trial court did not abuse its discretion in admitting this testimony.

In light of our disposition of these issues, we decline to address defendant's contention related to the jury's request for additional guidance during deliberations. We also decline to address defendant's contentions regarding his habitual criminal convictions.

The judgment is reversed, and the case is remanded for a new trial.

Judge JONES and Judge ROY, concur.