22CA1000 Peo v Stokes 06-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1000
El Paso County District Court No. 19CR7180
Honorable Eric Bentley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Garfield Stokes,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, John Garfield Stokes, appeals his convictions for attempted second degree murder and first degree assault. He contends that (1) the district court erred by denying his motion to elect; (2) his convictions are inconsistent with his acquittal of second degree murder; (3) the attempted murder conviction must be vacated either because the indictment was insufficient or because he was acquitted of the underlying murder; (4) the evidence was insufficient to sustain his first degree assault conviction; and (5) the jury instructions erroneously limited deadly force self-defense to the second degree murder charge. We affirm the judgment.

## I. Background

¶ 2 After a verbal confrontation at a gas station, Stokes drove to a car wash, followed by the victim, Nicholas Anderson. As Stokes pulled into the car wash bay, Anderson pulled up behind him, got out of his car, and walked up to Stokes's vehicle, where he began punching the window and attempting to open the driver's side door. Eventually, Anderson pulled the door open and reached inside.

¶ 3 As he did so, Stokes shot him three times, causing Anderson to fall to the ground. Stokes immediately got out of his vehicle and shot Anderson twice more while he was on the ground. He tried to

shoot him a sixth time, but the gun did not fire. Anderson died from the shooting. The evidence at trial established that the first three gunshots were fatal, while the last two would not have been.

¶ 4    All five shots and the "dry fire" occurred in about ten seconds. The entire forty-second encounter — beginning with Anderson approaching Stokes's vehicle — was captured on surveillance video.

¶ 5    Stokes was indicted on charges of second degree murder, first degree assault, and attempted first degree murder, as well as other counts not directly related to the shooting. The indictment specified that it encompassed all lesser included offenses.

¶ 6    At trial, there was no dispute that Stokes had shot and killed Anderson. But Stokes argued that he had done so in self-defense. The district court gave the jury two self-defense instructions: (1) a "deadly physical force in defense of person" instruction, which applied to the second degree murder count; and (2) a "defense of person" instruction, which applied to the remaining charges.

¶ 7    The jury was given two verdict forms for the shooting-related charges. The first listed second degree murder as the primary charge and first and second degree assault as lesser included offenses. The second listed attempted first degree murder as the

primary charge and attempted second degree murder and attempted second degree assault as lesser included offenses.

¶ 8 The jury found Stokes guilty of first degree assault (as a lesser included offense of second degree murder) and attempted second degree murder (as a lesser included offense of attempted first degree murder). The district court sentenced Stokes to eight years in prison for the attempted second degree murder conviction, with lesser concurrent sentences on all other offenses.

## II. Motion to Elect

¶ 9 As Stokes sees it, the problems with his convictions stem from the denial of his motion to require the prosecution to elect which evidence supported each charge. This, he argues, allowed the prosecution to slice a single ten-second event — the shooting and killing of Anderson — into multiple individual gunshots supporting different offenses. And he blames that theory for what he views as the overarching unfairness in his case — that the jury convicted him of first degree assault and attempted second degree murder, despite its apparent finding that he acted in self-defense when he killed Anderson. Beginning with what Stokes deems to be the

3

source of that perceived inconsistency, we conclude that the district court did not abuse its discretion in ruling on his motion to elect.

## A. Additional Background

¶ 10 During trial, Stokes moved for an election by the prosecution as to "what evidence constitutes which offenses," or alternatively, a unanimity instruction with accompanying interrogatories. Defense counsel asserted that his argument in support of his motion for judgment of acquittal depended on whether the prosecution intended to treat the shooting as a single continuous transaction or to treat each gunshot as a distinct act. The prosecution confirmed its position that each shot was part of a single transaction but that there were "different acts of conduct within that transaction."

¶ 11 Stokes then filed a brief expanding upon his argument. He asserted that, given the prosecution's theory that the shots were all part of one transaction, all the shooting-related charges — second degree murder, attempted first degree murder, and first degree assault — should merge if he was convicted. While conceding that double jeopardy did not preclude the court from submitting all three charges to the jury, he argued that the "cleanest method" for avoiding any multiplicity concerns was to include them on a single

verdict form, with attempted first degree murder and first degree assault as lesser included offenses of second degree murder.

¶ 12     In ruling on Stokes's motion, the court first noted that the prosecution had elected to treat the five gunshots and attempted sixth shot as a single transaction.  But because that single transaction was composed of multiple acts that may have had "different effects" on Anderson, the court would exercise its discretion to give a modified unanimity instruction that required the jury to "unanimously agree that [Stokes] committed the offense by means of the same act or acts or by means of all of his acts."  The district court declined to give the jury the requested interrogatories.

¶ 13     As to the lesser included offenses, the district court agreed with Stokes that first degree assault was a lesser included offense of second degree murder, so it included those offenses on the same verdict form.  But it concluded that attempted first degree murder was not a lesser included offense of second degree murder and, thus, would be on a different verdict form.  The court explained that any issues regarding merger would be addressed at sentencing.

## B.   Preservation

¶ 14   We first note that the election argument Stokes makes on appeal is not the same one he made in the district court.  In the district court, Stokes argued that the prosecution should be required to elect which acts or series of acts supported which charge or, alternatively, that a unanimity instruction should be given.  *See People v. Archuleta*, 2020 CO 63M, ¶ 21.  The district court largely granted that motion by confirming that the prosecution had elected to treat all six gunshots as a single transaction *and* giving the jury a modified unanimity instruction.

¶ 15   On appeal, Stokes argues that the prosecution should have been required to make a different kind of election — an election of a single count upon which the issue of Anderson's death would be tried.  *See* § 18-1-408(3), C.R.S. 2024.  But Stokes never requested that the prosecution elect a single count.  To the contrary, Stokes agreed that all three shooting-related charges should be submitted to the jury, and he specifically *requested* the additional lesser included offense of attempted second degree murder.  The only issue was whether those offenses should be included on one verdict form or two — an issue Stokes does not raise on appeal.

¶ 16    Because Stokes did not preserve his argument that the prosecution was required to elect a single *count* — as opposed to a single *act* upon which the counts were based — we review this contention for plain error.  *See Hagos v. People*, 2012 CO 63, ¶ 14.

## C.    Election of a Single Count

¶ 17    When multiple counts are supported by identical evidence, "the court upon application of the defendant *may* require the state . . . to elect the count upon which the issues shall be tried." § 18-1-408(3) (emphasis added).  But the district court is not required to grant such a request.  *People v. DeBoer*, 829 P.2d 447, 450 (Colo. App. 1991).  Instead, it has discretion to either grant or deny the motion.  *People v. Muckle*, 107 P.3d 380, 382 (Colo. 2005); *People v. Fry*, 74 P.3d 360, 369 (Colo. App. 2002), *aff'd*, 92 P.3d 970 (Colo. 2003).  We review the district court's decision for an abuse of discretion, meaning we will reverse only if the ruling is "manifestly arbitrary, unreasonable, or unfair."  *Fry*, 74 P.3d at 369.

¶ 18    The denial of a section 18-1-408(3) motion to elect does not implicate double jeopardy because there can be no double jeopardy violation until the defendant is *convicted* of multiplicitous counts.  *See People v. Zadra*, 2017 CO 18, ¶ 17.  Thus, when a defendant's

7

conduct establishes more than one offense, the defendant may be *prosecuted* for each offense. § 18-1-408(1); *Reyna-Abarca v. People*, 2017 CO 15, ¶ 41 (noting that prosecutors may charge "multiple claims arising from the same set of facts"). Then, if the defendant is convicted of both a greater and lesser included offense, the offenses must merge so there is only one conviction. *See Reyna-Abarca,* ¶ 79; *see also* § 18-1-408(1)(a). And if a defendant is convicted of multiple *nonincluded* offenses based on "the same act or series of acts arising from the same criminal episode," the sentences on those offenses must run concurrently. § 18-1-408(2), (3).

¶ 19    The district court did not abuse its discretion by declining to require the prosecution to elect a single count on which to proceed. First, as noted above, Stokes did not request such an election. He argued that the first degree assault charge *should* be submitted to the jury as a lesser included offense of second degree murder — exactly as it was. And he specifically *requested* that the jury be instructed on attempted second degree murder as a lesser included offense as well. The district court did not err — much less plainly err — by not limiting the prosecution to a single count when Stokes

never asked for such a limitation. *See* § 18-1-408(3) (permitting the court to require an election "upon application of the defendant").

¶ 20 Second, even if we could construe Stokes's motion to elect as a request under section 18-1-408(3) to elect among the three charges, and even assuming Stokes did not waive such an election by requesting the lesser included offenses, the district court did not abuse its discretion. Because the evidence could have sustained any one of the charged offenses, the district court properly allowed the jury to consider all the charges. *See Fry*, 74 P.3d at 370. The court then imposed concurrent sentences on the counts for which Stokes was convicted. *See* § 18-1-408(3); *Fry*, 74 P.3d at 369-70 (holding that the district court did not abuse its discretion by denying the defendant's motion to elect because "it nevertheless sentenced him to concurrent sentences"); *People v. Hardin*, 607 P.2d 1291, 1295 (Colo. 1980) (holding that district court did not err by allowing charges of attempted murder, first degree assault, and second degree assault based on one incident where the charges were based on different shots and the sentences ran concurrently).

## D. Election of Charged Acts

¶ 21    In addition to a section 18-1-408(3) election of a single *count,* the prosecution may be required to elect a single *act* (or series of acts) that supports the charged offense if it "presents evidence of multiple discrete acts, any one of which would constitute the offense charged, and there is a reasonable likelihood that jurors will disagree regarding which act was committed." *Archuleta,* ¶ 21. This rule was the basis for Stokes's motion to elect in the district court, and Stokes reasserts this type of election on appeal. We review this issue de novo. *People v. Wagner,* 2018 COA 68, ¶ 38.

¶ 22    When multiple distinct acts could each support a conviction, the district court has two options. First, it can require the prosecution to select the act that is the basis for the charge. *Id.* at ¶ 39. Second, the court can give the jury a "modified unanimity instruction," advising the jury that it "must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts." *Archuleta,* ¶ 22 (citation omitted). These two options are alternatives, either of which is sufficient to protect the defendant's right to a unanimous jury verdict. *Id.*; *Quintano v. People,* 105 P.3d 585, 592-95 (Colo. 2005).

10

¶ 23    The prosecution argued, and the district court agreed, that no election or modified unanimity instruction was required in this case because Stokes was charged with engaging in a "single criminal transaction." *Archuleta*, ¶ 31.  We agree with Stokes that this is a close call.  On one hand, the five gun shots and attempted sixth shot spanned less than ten seconds, and the prosecution said it would treat them as a single transaction.  *See id.* (holding that election was not required where a "series of discrete acts . . . contributed to and together ultimately caused [the victim's] death"); *People v. Wester-Gravelle*, 2020 CO 64, ¶¶ 40-41 (holding that there was no plain error where prosecution "tried the case as involving a single transaction" consisting of three incidents of forgery).

¶ 24    On the other hand, as the district court noted, those shots had "different effects" on the victim.  More importantly, the prosecution drew that distinction in closing, arguing that all of the shots supported the second degree murder count while only the last two supported the attempted first degree murder count.  And while there was no "reasonable likelihood that jurors [would] disagree regarding which act was committed," *Archuleta*, ¶ 21 — there was

11

no dispute that Stokes took all five shots — jurors reasonably could have disagreed about which shots were taken in self-defense.

¶ 25    But we need not decide whether the evidence could support multiple discrete acts because the district court gave a modified unanimity instruction.  That instruction "protect[ed] [Stokes's] right to a unanimous verdict by assuring that some jurors [did] not convict on one offense and others on a separate offense."  *Quintano*, 105 P.3d at 593; *see also People v. Larsen*, 2023 COA 28, ¶ 33 (holding that a failure to elect does not violate due process if a modified unanimity instruction "sufficiently cures any harm from the prosecution's failure to individualize the counts charged").

¶ 26    Stokes also argues that the lack of an election deprived him of due process and his constitutional right to present a defense because he was forced to defend against a "moving target."  *See People v. Estorga*, 612 P.2d 520, 523 (Colo. 1980) ("[A]n election enables the defendant to prepare and make his defense to a specific charge . . . .").  But the supreme court has pulled back somewhat from the "defense preparation rationale" for the election requirement, noting that "in most instances the defendant can

12

obtain adequate information to prepare a defense" through other procedures. *Thomas v. People*, 803 P.2d 144, 154 (Colo. 1990).

¶ 27 That is the case here. By the time Stokes filed his motion to elect, the prosecution had nearly rested its case and "there [was] little opportunity for further defense preparation." *Id.* Stokes was well aware of the evidence against him and claimed self-defense to the entire incident, not simply to certain shots and not others. And in response to Stokes's motion, the prosecution confirmed that some shots were fatal and some were not. It further explained that, although the shots were all part of a single transaction, Stokes's actions while Anderson was on the ground were alone sufficient to support the attempted murder charge. Thus, Stokes had notice of the prosecution's theory. Under these circumstances, a formal election was not "essential to accord due process" to Stokes. *Id.*

### III. Inconsistent Verdicts

¶ 28 Stokes also argues that his convictions for first degree assault and attempted second degree murder must be vacated because they

are inconsistent with his acquittal of second degree murder.[1] He contends that the acquittal on the murder charge necessarily means the jury found he acted in self-defense, which should have resulted in a complete acquittal on all charges. We disagree.

¶ 29    Consistency between guilty and not guilty verdicts is not required. *People v. Delgado*, 2019 CO 82, ¶ 14; *People v. Frye*, 898 P.2d 559, 570-71 (Colo. 1995). Unlike mutually exclusive *guilty* verdicts, which are specific findings "encompassing all the elements of the crime," an acquittal is not a finding and may have "various explanations." *Delgado*, ¶ 26. It may, for example, be "the result of lenity." *People v. Brooks*, 2020 COA 25, ¶ 12. Absent an express jury finding negating an element of an offense, *id.* at ¶ 24, "[t]he most that can be said . . . is that . . . *either* in the acquittal or the conviction the jury did not speak their real conclusions." *United State v. Powell*, 469 U.S. 57, 63 (1984) (emphasis added) (citation omitted). We may not guess which it is. *See Frye*, 898 P.2d at 569.

---

[1] To the extent the People suggest that the jury verdict finding Stokes guilty of the lesser included offense of first degree assault does not constitute an acquittal of the second degree murder charge, we disagree. *See People v. Viburg*, 2021 CO 81M, ¶ 21 ("By definition, a jury that finds a defendant guilty of a lesser included offense axiomatically acquits them of the greater offense.").

14

Rather, "the convictions will generally be upheld, despite their rational incompatibility with the acquittals." *Id.* at 568.

¶ 30    Stokes urges us to make an exception in this case because the "ultimate issue of fact was self-defense in a single transaction" and there can be no explanation for the acquittal of second degree murder other than that he acted in self-defense. But the inconsistent resolution of controlling factual issues is the *essence* of an inconsistent verdict claim. *See id.* at 565-66, 571 (upholding conviction for felony menacing with a gun despite acquittal on first degree sexual assault indicating that defendant did not use a gun); *State v. Ramos*, 479 S.W.3d 500, 508-09 (Tex. App. 2015) (affirming aggravated assault conviction despite acquittal of murder where the defendant claimed he acted in self-defense). Because "the jury holds an unreviewable power to return a verdict of not guilty even for impermissible reasons," we may not look behind the verdict — no matter how clear the jury's rationale might seem. *McElrath v. Georgia*, 601 U.S. 87, 94, 97 (2024) (citation omitted).

¶ 31    We also note that, even setting aside the possibility of compromise or lenity, the verdict is not necessarily inconsistent. The jury could have found that Stokes did not knowingly cause

15

Anderson's death, as required for second degree murder, § 18-3-103(1)(a), C.R.S. 2024, but did intend to cause him serious bodily injury, as required for first degree assault, § 18-3-202(1)(a), C.R.S. 2024 — that is, that Stokes intended to seriously injure Anderson but not kill him.  Or the jury could have found that Stokes acted in self-defense in firing the first three fatal shots but lost that right once Anderson fell to the ground.  *Cf. Sanchez v. People*, 470 P.2d 857, 860 (Colo. 1970) (noting that a defendant's "exercise of his right of self-defense, lawful in the first instance, [may] bec[o]me unlawful by reason of the manner in which he defended himself").  Indeed, in arguing that attempted first degree murder was a lesser included offense of second degree murder, Stokes asserted in the district court that there *was* a rational basis for a verdict acquitting him of murder but convicting him of attempted murder.

¶ 32    In any event, this is why we do not speculate about why the jury did what it did.  *See Frye*, 898 P.2d at 568-59.  Because a conviction need not be consistent with an acquittal, Stokes's

acquittal of second degree murder does not preclude his convictions for assault and attempted murder.[2]  *See id.* at 571.

## IV.    Attempted Second Degree Murder

¶ 33    Stokes next challenges his conviction for attempted second degree murder on two other grounds.  First, he asserts that the indictment was insufficient because it alleged that he caused Anderson's death and not that he attempted to do so.  Second, he contends that he cannot be convicted of attempted murder when he was acquitted of the completed act.  We disagree on both points.

## A.    Sufficiency of the Indictment

¶ 34    An indictment must "provide[] the defendant with sufficient notice of the charged offenses and facts to allow for adequate trial preparation and protect the defendant from subsequent prosecution for the same offense."  *People v. Gallegos*, 260 P.3d 15, 21 (Colo. App. 2010).  We review the sufficiency of an indictment de novo.  *Id.*

---

[2] Stokes asserts that the purportedly inconsistent verdicts violate double jeopardy.  But double jeopardy bars "a second prosecution for the same offense *after* acquittal."  *Viburg*, ¶ 15 (emphasis added) (citation omitted).  It does not "come into play . . . when a jury convicts on one charge and acquits on another" in the same case.  *People v. Delgado*, 2019 CO 82, ¶ 43.

¶ 35    The indictment charged Stokes with attempted first degree murder.  Although it included a general factual recitation alleging that Stokes "knowingly caused the death" of Anderson, the attempted murder count alleged that he *attempted* to do so:

> On or about October 7, 2019, by engaging in conduct constituting a substantial step toward the commission of murder in the first degree, [Stokes] unlawfully, feloniously, after deliberation, and with the intent to cause the death of a person other than himself, attempted to cause the death of [Anderson]; in violation of sections 18-3-102(1)(a) and 18-2-101, C.R.S. [2019].

This count provided Stokes with notice of the attempted murder charge and "answer[ed] the questions of 'who, what, where, and when'" for that offense.  *Gallegos*, 260 P.3d at 21 (citation omitted).

¶ 36    The indictment did not expressly charge Stokes with attempted *second degree* murder.  But notice of a charged offense also provides adequate notice of uncharged lesser included offenses.  *People v. Martinez*, 2024 COA 34, ¶ 22; *see also Brown v. People*, 239 P.3d 764, 767 (Colo. 2010) (holding that attempted second degree murder is a lesser included offense of attempted first degree murder).  And the indictment in this case made that point

18

expressly, providing that it encompassed the listed offenses "and all lesser included offenses from the date and time of the incident."

¶ 37     Moreover, it was Stokes who requested that attempted second degree murder be submitted to the jury as a lesser included offense. Having done so, he cannot now complain that he did not have sufficient notice of that offense. *See People v. Williams*, 23 P.3d 1229, 1232 (Colo. App. 2000) (holding that the defendant "effectively waived" any deficiency in the indictment by tendering an instruction on a lesser offense that included the disputed element).

¶ 38     Thus, the indictment was sufficient to give Stokes notice of the attempted second degree murder charge.

### B.     Inconsistency with Acquittal of Murder

¶ 39     We also reject Stokes's argument that his acquittal of murder precludes his conviction for attempted murder.

¶ 40     For this proposition, Stokes relies primarily on *Martinez v. People*, 137 P.2d 690, 692 (Colo. 1943), which stated that "if a person is charged with a crime, and if the evidence shows a completed act, an acquittal on the charge will preclude a prosecution for an attempt to commit the act." He also cites *Lewis*

*v. People*, 235 P.2d 348 (Colo. 1951), and *People v. Yoshio Futamata*, 343 P.2d 1058 (Colo. 1959), to support that rule.

¶ 41　But these cases rested on the obsolete principle that failure to complete the crime is an element of attempt. *See Lewis*, 235 P.2d at 351 ("[W]hen a crime is completely consummated, there can be no prosecution for an attempt.") (citation omitted); *Martinez*, 137 P.2d at 692 (defining attempt as "an effort to commit a crime, and a direct, ineffectual act done towards its commission"). That is no longer the law. Under today's criminal attempt statute, it is *not* a defense "that the crime attempted was actually perpetrated by the accused." § 18-2-101(1), C.R.S. 2024.[3] Thus, unlike at the time of *Martinez*, *Lewis*, and *Yoshio Futamata*, evidence of a completed offense *can* support a conviction for attempt to commit that offense. *See People v. Harlan*, 8 P.3d 448, 479 (Colo. 2000) (noting that attempted murder conviction could be based on "successful attempt" to kill victim). And as we explain above, any inconsistency

---

[3] Colorado first codified criminal attempt in 1963. *See* § 40-25-1, C.R.S. 1963; *People v. Lehnert*, 163 P.3d 1111, 1113 (Colo. 2007). The current version of the statute has remained largely unchanged since 1971. Ch. 121, sec. 1, § 40-2-101, 1971 Colo. Sess. Laws 414; § 18-2-101(1), C.R.S. 2024; *Lehnert*, 163 P.3d at 1114.

between an acquittal of the completed offense and a conviction of the attempt is not a problem either. *See Frye*, 898 P.2d at 570-71.

¶ 42    Moreover, even if these cases remained good law, the evidence provides "some basis" for an acquittal of murder and conviction of attempted murder. *Yoshio Futamata*, 343 P.2d at 1063 (citation omitted). The jury could have found that Stokes either did not knowingly kill Anderson or acted in self-defense when he fired the first three fatal shots but did attempt to kill him when he fired the last two shots and attempted to fire another. *See id.* at 1064. It does not matter that Anderson was already mortally wounded when the final shots were fired. *See* § 18-2-101(1) ("Factual or legal impossibility of committing the offense is not a defense . . . ."); *People v. Duran*, 272 P.3d 1084, 1093-94 (Colo. App. 2011) (holding that second set of gunshots was sufficient to support attempted murder conviction even though victim was killed by prior gunshots).

## V.    First Degree Assault

¶ 43    Stokes next contends that the evidence was insufficient to support his first degree assault conviction because the first three shots were fatal and the last two did not cause serious bodily injury. Viewing the evidence as a whole, we are not persuaded.

21

¶ 44    In assessing the sufficiency of the evidence, we review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain the conviction. *Johnson v. People*, 2023 CO 7, ¶ 13. In doing so, we view the evidence "as a whole and in the light most favorable to the prosecution" to determine if the evidence is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (citation omitted).

¶ 45    As relevant in this case, a person commits first degree assault if, "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." § 18-3-202(1)(a). "Serious bodily injury," at the time of Stokes's offense, included "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, [or] a substantial risk of protracted loss or impairment of the function of any part or organ of the body." § 18-1-901(3)(p), C.R.S. 2019.[4] The

---

[4] Section 18-1-901(3)(p), C.R.S. 2024, has since been amended to include "a penetrating knife or penetrating gunshot wound." It also includes, and included at the time of Stokes's offense, "breaks, fractures, . . . or burns of the second or third degree." *Id.*

"substantial risk of death determination" turns on "the facts of the actual injury . . . , *not* the risk generally associated with the type of conduct or injury in question." *People v. Vigil*, 2021 CO 46, ¶ 33.

¶ 46 We first reject Stokes's suggestion that our review is limited — either by the acquittal on the murder count or by the prosecution's theory at trial — to the final two shots. Sufficiency of the evidence review turns on whether the evidence as a whole "could support any rational determination of guilt beyond a reasonable doubt . . . *independent of the jury's determination that evidence on another count was insufficient.*" *Frye*, 898 P.2d at 569 (citation omitted). Further, the sufficiency of the evidence must be "measured 'against the elements of the offense,'" not against the prosecution's arguments at trial.[5] *People v. Helms*, 2016 COA 90, ¶ 52 (citation omitted). Thus, in determining whether the evidence was sufficient to prove serious bodily injury, we must consider all five shots.

¶ 47 Considering the evidence as a whole, there can be little question that it was sufficient to prove beyond a reasonable doubt

---

[5] We also note that the first degree assault charge was submitted as a lesser included offense of the second degree murder charge, which the prosecution argued in closing was based on all five shots.

23

that Anderson suffered injuries that "involve[d] a substantial risk of death." § 18-1-901(3)(p). Indeed, as Stokes recognizes, it was undisputed that those injuries *did* cause death. An injury that naturally results in death necessarily involves a substantial risk of death when it occurs. It is immaterial that some of the shots may not have involved a substantial risk of death or that Anderson's death may have cut off any further complications.[6]

## VI. Self-Defense Jury Instructions

¶ 48 Stokes finally contends that the self-defense jury instructions deprived him of a full acquittal by limiting the use of deadly force to the second degree murder count and applying the nondeadly force standard to the other counts. To the extent this is a challenge to the jury instructions, Stokes waived or invited any error by tendering those instructions and affirmatively requesting the nondeadly force instruction. To the extent it is a reframing of his inconsistent verdict argument, it fails for the reasons above.

---

[6] Stokes asserts that a witness before the grand jury erroneously testified that "getting shot with a bullet anywhere" is serious bodily injury. But short of structural error, an error during grand jury proceedings is "rendered harmless once a petit jury has reached a guilty verdict." *People v. Nozolino*, 2014 COA 95, ¶ 37.

24

## A. Additional Background

¶ 49     Stokes tendered two separate proposed jury instructions on self-defense: one for "deadly physical force in defense of person" and one for "defense of person," which set out the lower standard of nondeadly physical force. The proposed instructions specified that Stokes asserted the "deadly physical force" defense to second degree murder and the "defense of person" defense to the other charges.

¶ 50     The prosecution objected to the nondeadly physical force instruction, arguing that it would confuse the jury because Stokes did not use "anything other than deadly physical force." Defense counsel argued that the instruction was appropriate because deadly physical force applies only to offenses that cause death and the nonmurder offenses did not have death as an element. Thus, he argued that those offenses were subject to the lower standard.

¶ 51     The district court agreed with Stokes, concluding that the general "defense of person" instruction was appropriate for the charges of attempted murder and assault because deadly force was not an element of those offenses. The court therefore gave both instructions Stokes tendered. The "deadly physical force" instruction, which tracked section 18-1-704(1) and (2)(a), C.R.S.

2024, provided that it applied to second degree murder.  The general "defense of person" instruction, which tracked only section 18-1-704(1), provided that it applied to the other counts.  That instruction did not include the element in the "deadly physical force" instruction that the defendant reasonably believed he was "in imminent danger of being killed or of receiving great bodily injury."

¶ 52    The elemental instructions cross-referenced the corresponding self-defense instruction.  The instruction for second degree murder included as an element that Stokes's conduct was not legally authorized by "deadly physical force in defense of person."  The instructions for the other counts included as an element that Stokes's conduct was not legally authorized by "defense of person."

## B.    Analysis

¶ 53    Stokes argues that the self-defense jury instructions were "deficient and confusing" because it was undisputed that he used deadly force.  He asserts that the deadly force instruction therefore should not have been limited to the murder charge.  But Stokes tendered those instructions.  Indeed, he went further, specifically arguing *against* the position he takes on appeal.  By doing so, he invited the putative error of which he complains, and we may not

26

review it.  *See People v. Rediger*, 2018 CO 32, ¶ 34 ("The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case . . . ."); *People v. Zapata*, 779 P.2d 1307, 1307 (Colo. 1989) (holding that invited error bars review of defense-tendered jury instruction).

¶ 54    Stokes also contends that, because there was a "single act of self-defense," there was no basis for the jury to find that he was justified in using deadly force but not nondeadly force.  But this is just a reprise of his argument that the verdicts were inconsistent.  To reiterate, we may not speculate as to *why* the jury acquitted Stokes of second degree murder.[7]  *See Frye*, 898 P.2d at 569.

### VII.   Disposition

¶ 55    The judgment is affirmed.

JUDGE DUNN and JUDGE BROWN concur.

---

[7] Stokes points out that the prosecution highlighted the different self-defense standards in closing.  But in doing so, the prosecution correctly explained that the general self-defense standard was a *lower* standard in that Stokes did not have to believe he was in imminent danger of death or serious bodily injury.  In other words, the prosecution's burden under that instruction was *higher*.